ATTORNEY FOR APPELLANTS
Joe Keith Lewis
Marion, Indiana

ATTORNEYS FOR APPELLEE
James J. Shea, Sr.
Timothy W. DeGroote
Andrew S. Williams
Fort Wayne, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF
INDIANA
Lucy R. Dollens
Jacob V. Bradley
Quarles & Brady LLP
Indianapolis, Indiana

Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED

Oct 26 2016, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 27S02-1510-CT-627

APRIL GOODWIN, TIFFANY RANDOLPH
AND JAVON WASHINGTON,

*Appellants (Respondents below),*

v.

YEAKLE'S SPORTS BAR AND GRILL, INC.

*Appellee (Petitioner below).*

Appeal from the Grant Superior Court I, No. 27D01-1105-CT-400
The Honorable Jeffrey D. Todd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 27A02-1407-CT-526

**October 26, 2016**
**(Corrected)**

**Rucker, Justice.**

Patrons injured after a shooting in a neighborhood bar sued the bar for negligence. The trial court granted summary judgment in the bar's favor concluding it owed no duty to the patrons because the shooting was not foreseeable as a matter of law. For the reasons that follow we agree and affirm.

**Facts and Procedural History**

In this summary judgment action, the undisputed facts most favorable to the non-moving party are these. During the late evening hours of August 27 and the early morning hours of August 28, 2010, April Goodwin, Tiffany Randolph, and Javon Washington (collectively "Plaintiffs") were seated at a table, socializing with friends at Yeakle's Sports Bar and Grill, a small establishment in Marion, Indiana (hereafter "the Bar"). Another patron, Rodney Carter, was seated nearby with his wife. At some point Carter thought he heard Washington make a derogatory remark about Carter's wife. This angered Carter who produced a handgun and fired at Washington. He struck Washington and accidently struck Goodwin and Randolph as well. All three shooting victims survived; and Carter later pleaded guilty to three counts of battery with a deadly weapon.

Plaintiffs filed a complaint for damages against the Bar[1] alleging negligence in "failing to provide security for its patrons; . . . failing to search Rodney Carter for weapons; . . . [and] failing to warn [P]laintiffs that Rodney Carter was armed and dangerous." App. at 15. After the parties conducted discovery the Bar moved for summary judgment arguing Carter's criminal acts were unforeseeable and thus the Bar had no duty to anticipate and take steps to prevent Carter's conduct. After a hearing the trial court agreed and entered summary judgment in the Bar's favor. On review the Court of Appeals reversed the judgment of the trial court and remanded this cause for further proceedings. In so doing the Court declared, "reasonable foreseeability is not part of the analysis with respect to the Bar's duty" and noted this is "an issue that has created confusion at every level of our judiciary." Goodwin v. Yeakle's Sports Bar and Grill, Inc., 28 N.E.3d 310,

---

[1] Plaintiffs' complaint also included Rodney Carter as a party-defendant. See App. at 14. However, on motion by Plaintiffs the trial court entered an order of default judgment against Carter on the question of liability. See App. at 26. The record is silent on whether he contested or otherwise challenged the order. In any event Carter has not participated in this appeal.

311 (Ind. Ct. App. 2015).[2] Endeavoring to clarify the confusion, and having previously granted transfer, we now affirm the judgment of the trial court.

## Standard of Review

When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Wagner v. Yates, 912 N.E.2d 805, 808 (Ind. 2009). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. Id. Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. Id. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 39 (Ind. 2002).

## Discussion
### I.

"[T]o prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." King v. Ne. Sec., Inc., 790 N.E.2d 474, 484 (Ind. 2003); accord Ford Motor Co. v. Rushford, 868 N.E.2d 806, 810 (Ind. 2007). Absent a duty there can be no negligence or liability based upon the breach. Peters v. Forster, 804 N.E.2d 736, 738 (Ind. 2004). Whether a duty exists is a question of law for the court to decide. Id.

---

[2] Amicus Curiae Defense Trial Counsel of Indiana makes a similar point: "[S]ignificant confusion still exists in lower Indiana courts" on the question of whether "reasonable foreseeability is a part of the duty analysis . . . ." Br. of Amicus Curiae at 2.

For a period of at least over the past two decades or so our case law has been less than perfectly lucid in explaining how a court determines whether a duty exists in the context of a negligence claim. This journey began with Webb v. Jarvis, 575 N.E.2d 992 (Ind. 1991). In that case, deciding whether a doctor owed a duty to a third party injured by the doctor's patient, we held that in order to determine whether a duty exists we employ a three-part balancing test: (1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns. Id. at 995-97. This Court has periodically used this balancing test in analyzing the existence of duty in certain cases.[3]

Thereafter in a trilogy of opinions handed down together, and with only limited fidelity paid to the three-part Webb balancing test, this Court held that in analyzing whether a landowner owes an invitee a duty to take reasonable care to protect the invitee from foreseeable third-party criminal attacks, we consider the totality of the circumstances. L.W. v. W. Golf Ass'n, 712 N.E.2d 983, 984-85 (Ind. 1999); Vernon v. Kroger Co., 712 N.E.2d 976, 979 (Ind. 1999); and Delta Tau Delta v. Johnson, 712 N.E.2d 968, 973 (Ind. 1999). This analysis included looking to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents . . . ." Delta Tau Delta, 712 N.E.2d at 972.

Four years later, in Northern Indiana Public Service Co. v. Sharp, 790 N.E.2d 462 (Ind. 2003), we explained that although the Webb three-part balancing test is a useful tool in determining whether a duty exists, this is so "only in those instances where the element of duty has not already been declared or otherwise articulated." Id. at 465. We noted for example there is no need to apply Webb to determine what duty a business owner owes its invitees because the law in this area had already been declared: "Proprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their

_____

[3] See, e.g., Stump v. Commercial Union, 601 N.E.2d 327, 332 (Ind. 1992) (employer's worker's compensation insurance carrier's duty to employee); Walker v. Rinck, 604 N.E.2d 591, 594 (Ind. 1992) (physician's duty to patient's unborn children); Mullin v. Mun. City of South Bend, 639 N.E.2d 278, 283 (Ind. 1994) (city's duty to dispatch ambulance to residential fire); Hooks SuperX, Inc. v. McLaughlin, 642 N.E.2d 514, 517 (Ind. 1994) (pharmacist's duty to customer); Heck v. Robey, 659 N.E.2d 498, 502 n.3 (Ind. 1995) (paramedic's duty to accident victim); Rice v. Strunk, 670 N.E.2d 1280, 1284 (Ind. 1996) (partnership's duty to individual partners); Cram v. Howell, 680 N.E.2d 1096, 1098 (Ind. 1997) (physician's duty to patient); Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265, 268 (Ind. 2003) (gun owners' duty of care to shooting victim in the storage and safekeeping of their handgun); Kramer v.

4

premises, including providing adequate staff to police and control disorderly conduct." Sharp, 790 N.E.2d at 465 (alteration omitted) (quoting Muex v. Hindel Bowling Lanes, Inc., 596 N.E.2d 263, 266 (Ind. Ct. App. 1992)); see also Delta Tau Delta, 712 N.E.2d at 971 ("[W]hile landowners are not to be made the insurers of their invitees' safety, landowners do have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks.").

Then, in Paragon Family Restaurant v. Bartolini, although reaffirming that "[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks," we noted a "procedural inconsistency" between Sharp and the Western Golf, Vernon, and Delta Tau Delta trilogy on the question of whether a redetermination of duty is necessary where the general duty is otherwise well-settled. 799 N.E.2d 1048, 1052, 1053 (Ind. 2003). In essence, on the one hand Sharp declared we need not redefine the duty owed by one party to another when that duty has already been defined or articulated, but on the other hand the trilogy required consideration of the totality of the surrounding circumstances to determine whether the criminal act was reasonably foreseeable. Concluding that Sharp provided the better view, we had this to say:

> Where, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty. The court's function was merely to adequately inform the jury of the applicable duty, and the jury was then to determine whether the Pub breached this duty of reasonable care to protect its invitees from foreseeable criminal attacks.

Bartolini, 799 N.E.2d at 1053. This language understandably could be read to mean that the trial court's sole responsibility with respect to the question of duty in a negligence action is simply to instruct the jury on the question—end of story. But such a reading is much too narrow. The very scope of the duty a landlord owes its invitees—to take reasonable precautions to protect invitees from *foreseeable* criminal acts—necessarily calls for the court's evaluation of foreseeability. In other words, the court must decide—in the context of duty—whether the criminal act is foreseeable. As we declared in Bartolini: "There is no doubt . . . that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The

Catholic Charities of Diocese of Fort Wayne-South Bend, Inc., 32 N.E.3d 227, 236 (Ind. 2015) (adoption agency's duty to prospective adoptive parents).

5

issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability." Id.

We applied this principle in Kroger Co. v. Plonski, 930 N.E.2d 1 (Ind. 2010). In that case a grocery store customer was assaulted in the store's parking lot. The store moved for summary judgment arguing among other things it owed no duty to the customer because the criminal assault was not reasonably foreseeable. Affirming the trial court's denial of the store's motion for summary judgment, we again emphasized, that although variously stated, the law in this area is settled: "Landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." Id. at 7 (quoting Bartolini, 799 N.E.2d at 1052). We went on to add:

> The more challenging inquiry is whether in a given case, involving business owners and their invitees, a particular element of duty has been met. This is so because the duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor. Although reasonable foreseeability is ordinarily a question of fact for the jury to decide, in the context of duty—which is a question of law—reasonable foreseeability is determined by the court.

Id. (internal quotation and citations omitted). In evaluating the foreseeability component of duty we turned again to the trilogy of Western Golf, Vernon, and Delta Tau Delta and held that in conducting this evaluation the court should consider the "totality of the circumstances" and examine "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents[,] to determine whether a criminal act was foreseeable." Plonski, 930 N.E.2d at 7 (quoting Delta Tau Delta, 712 N.E.2d at 972-73). We hasten here to point out this was not intended as a resurrection of the trilogy on the question of what duty a landlord owes its invitees. Again, that issue is settled. Rather, in evaluating the foreseeability component of duty we turned to the trilogy for useful guidance on how the trial court may accomplish that end. However, as discussed in more detail in Part III of this opinion, we now recognize that although the "totality of the circumstances" test is useful in determining foreseeability in the context of proximate causation, it is inappropriate when analyzing foreseeability in the context of duty. This brings us to our next point.

6

**II**.

At least part of the confusion in this area of the law is grounded in the fact that for most negligence actions foreseeability is a component of proximate causation only. See, e.g., Best Homes, Inc. v. Rainwater, 714 N.E.2d 702, 706 (Ind. Ct. App. 1999) (noting "[p]roximate cause is an essential element of a negligence claim"); Control Techniques, Inc. v. Johnson, 762 N.E.2d 104, 108 (Ind. 2002) (observing "[w]hether or not proximate cause exists is primarily a question of foreseeability"). And in the context of evaluating proximate causation our courts have long held that foreseeability is a question of fact for the jury to decide. See, e.g., Johnson, 762 N.E.2d at 109 (noting "the jury is . . . required to decide whether an actor's negligence was a proximate cause of the plaintiff's injury"); see also Humphery v. Duke Energy Ind., Inc., 916 N.E.2d 287, 295 (Ind. Ct. App. 2009) (noting "it is for a jury to determine whether it was reasonably foreseeable that a collision could occur at [a particular] intersection resulting in the type of harm suffered by [the victim]"). But in the case before us foreseeability is not only a component of the proximate cause element of negligence, it is also a component of the *duty* element of negligence as well. And, we repeat for emphasis, whether a duty exists is a question of law for the court to decide. Yost v. Wabash College, 3 N.E.3d 509, 515 (Ind. 2014).

In sum, because foreseeability is—in this particular negligence action—a component of duty, and because whether a duty exists is a question of law for the court to decide, the court must of necessity determine whether the criminal act at issue here was foreseeable. This is not a "redetermination" of the duty a landowner owes its invitees. Rather, the focus is on the point and manner in which we evaluate whether foreseeability does or does not exist. See Bartolini, 799 N.E.2d at 1053. And that point initially rests with the trial court as gatekeeper.

We acknowledge the concept of foreseeability as a component of duty is not universally embraced.[4] But as the Supreme Court of Tennessee has observed, "[w]hile there have certainly

---

[4] See, e.g., Restatement (Third) of Torts: Liability for Physical and Emotional Harm §7(i) (2010) (expressing the view that because the extent of foreseeable risk depends on the specific facts of the case, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter); A.W. v. Lancaster Cty. Sch. Dist. 0001, 784 N.W.2d 907, 914 (Neb. 2010) ("[B]y incorporating foreseeability into the analysis of duty, a court transforms a factual question into a legal issue and expands the authority of judges at the expense of juries or triers of fact."); Gipson v. Kasey, 150 P.3d 228, 231 (Ariz. 2007) (en banc) ("The jury's fact-finding role could be undermined if courts assess foreseeability in

been able and skillful critiques of the role that foreseeability plays in determining whether a duty exists, the majority of courts continue to use foreseeability as a central component of their analyses." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 366 (Tenn. 2008) (citations omitted); see also Posecai v. Wal-Mart Stores, Inc., 752 So.2d 762, 766 (La. 1999) (noting "[m]ost state supreme courts that have considered the issue agree that business owners do have a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks"). In like fashion, despite critiques to the contrary, we decline to chart a different course. Instead, we continue to endorse the position that in some negligence actions foreseeability plays a role in the analysis of duty.

## III.

Having concluded that as a component of duty, foreseeability must be determined by the court, we must answer the question, how does the court undertake this determination? Not surprisingly there is conflict in our opinions on this issue as well. In Webb, this Court held, "[i]mposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with *exactly the same factors as is the inquiry into proximate cause*." 575 N.E.2d at 997 (emphasis added). Accordingly, the Court of Appeals initially adhered to this holding. See, e.g., State v. Cornelius, 637 N.E.2d 195, 198 (Ind. Ct. App. 1994) (quoting Webb for the proposition that "part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. . . .").

But in Goldsberry v. Grubbs, 672 N.E.2d 475 (Ind. Ct. App. 1996), the Court of Appeals discussed the Webb three-part balancing test, noted its inconsistent application and results—even where the facts were very similar—and determined the reason for this anomaly was the failure to distinguish between foreseeability in the context of duty and foreseeability in the context of proximate cause. The court explained:

---

determining the existence of duty as a threshold legal issue."); see also Thompson v. Kaczinski, 774 N.W.2d 829, 835 (Iowa 2009) (noting "[a] lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination" (quotation omitted)).

> [T]he foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

Id. at 479 (internal citations omitted). Several panels of the Court of Appeals followed this line of reasoning.[5] Thereafter in Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265 (Ind. 2003), without citing Goldsberry, this Court declared, "[w]e decline to take a narrow view of Webb's foreseeability of harm prong and determine that this factor weighs in favor of the establishment of a duty." Id. at 269. In response to Estate of Heck, the Court of Appeals observed: "Several panels of this Court have interpreted this statement [declining to take a narrow view of Webb's foreseeability of harm prong] as an indication that, at the very least, Goldsberry's foreseeability analysis has been called into question by our supreme court." Carter v. Indianapolis Power & Light Co., 837 N.E.2d 509, 517 (Ind. Ct. App. 2005) (quotations and alteration omitted) (citing cases). Despite this observation Goldsberry remained resilient. See, e.g., Sparks v. White, 899 N.E.2d 21, 29-30 (Ind. Ct. App. 2008) (declaring "[o]ur holding today is in line with Goldsberry. . . . [T]he plaintiff's burden of proof on foreseeability is higher for purposes of proximate cause than it is for purposes of the duty analysis."); Barnard v. Menard, Inc., 25 N.E.3d 750, 755 (Ind. Ct. App. 2015) (citing Goldsberry with approval and following its analytical approach).

Today, upon further reflection, we are of the view that Goldsberry provides the more accurate framework for assessing foreseeability in the duty context. We thus adopt it and expressly disapprove of the contrary approach set forth in Webb and Estate of Heck. In so doing we join a number of jurisdictions that also distinguish between the analytical framework used to determine foreseeability in the context of duty and that used to determine foreseeability in the

---

[5] See, e.g., Hapner v. State, 699 N.E.2d 1200, 1206 (Ind. Ct. App. 1998); Franklin v. Benock, 722 N.E.2d 874, 879-80 (Ind. Ct. App. 2000); Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361, 367 (Ind. Ct. App. 2002); Guy's Concrete, Inc., v. Crawford, 793 N.E.2d 288, 296 (Ind. Ct. App. 2003).

context of proximate cause.[6] The jurisdictions vary somewhat in expounding on the difference between the two. However, addressing the distinction, the Supreme Court of Appeals of West Virginia captures the underlying rationale as follows:

> [A] court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party. The jury, by contrast, considers "foreseeability". . . [in] more focused, fact-specific settings. . . .

Strahin v. Cleavenger, 603 S.E.2d 197, 207 (W.Va. 2004) (alterations and emphasis in original (quotation omitted). This rationale is consistent with the observation in Goldsberry that "the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." 672 N.E.2d at 479.

But because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome is "sufficiently likely" is not enough to give rise to a duty. Instead, for purposes of determining whether an act is foreseeable in the context of duty we assess "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." Satterfield, 266 S.W.3d at 367.

So, where does this leave the "totality of the circumstances" tests we endorsed in Delta Tau Delta which requires an examination of "all of the circumstances surrounding an event,

---

[6] See, e.g., Bodkin v. 5041 S.P. Inc., 768 N.E.2d 194, 203 (Ill. App. Ct. 2002) ("Although 'reasonable foreseeability' is crucial to both duty and proximate cause, courts must take care to keep duty and proximate cause analytically independent . . . ."); Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017, 1020-21 (N.J. 1997) ("Foreseeability as a determinant of a business owner's duty of care to its customers is to be distinguished from foreseeability as a determinant of whether a breach of duty is a proximate cause of an ultimate injury."); Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1321-22 (Okla. 1996) (Foreseeability in the context of a duty of care "must not be confused with the foreseeability element of proximate cause."); McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla. 1992) ("[F]oreseeability relates to duty and proximate causation in different ways and to different ends."); Mack v. Altmans Stage Lighting Co. Inc., 470 N.Y.S.3d 664, 667 (N.Y. App. Div. 1984) ("Foreseeability . . . plays a role in the proximate cause equation, albeit quite different from that in determining the scope of duty.").

including the nature, condition, and location of the land, as well as prior similar incidents"? 712 N.E.2d at 972. With its broad applicability and higher burden of proof this test is certainly appropriate as a useful guide to the fact-finder in determining foreseeability in the context of proximate cause. But, precisely because this test focuses on the particular facts of the case rather than a broader inquiry, it is ill-suited to determine foreseeability in the context of duty. With the foregoing framework in mind we turn to the merits of the case before us.

## IV.

In support of its contention that the criminal assault on Plaintiffs was not foreseeable, the Bar submitted a copy of the Plaintiffs' complaint; portions of the deposition testimony of several witnesses, including presumptive shooter Rodney Carter; and answers to interrogatories and requests for admissions submitted by plaintiff Javon Washington. Collectively the Bar's Rule 56 materials established the following facts: (1) the Bar is generally considered a safe neighborhood bar; (2) prior to August 28, 2010, there had never been a shooting at the Bar; (3) prior to that date none of the parties or witnesses had ever seen a gun in the Bar; and (4) Rodney Carter had a reputation as a joker and a comedian, was not known as a violent person, and did not have a reputation for engaging in fights. See generally App. at 39, 45-46, 51-53, 59, 64, 75, 78, 80-81, 96.

Opposing the Bar's contention, Plaintiffs mostly relied upon selected portions of the same depositions the Bar relied upon in support of its motion for summary judgment. Additionally, Plaintiffs also submitted various "run reports" and "investigative reports" of the Marion police department. See App. at 305-56. With the exception of the deposition testimony of two witnesses—presumptive shooter Carter and plaintiff Washington—none of the witnesses' testimony proffered by Plaintiffs shed any light on the question of whether the shooting at the Bar was foreseeable.[7] With respect to Washington, he testified the Bar was located in "not the

---

[7] We observe Plaintiffs do not actually quote the witnesses' testimony directly; instead they summarize the same. In any event for the most part the witnesses merely recount the events of August 28, 2010, and complain directly or by inference that the Bar lacked adequate security. A couple of representative examples suffice. In a one sentence statement attributed to witness and named plaintiff April Goodwin, Plaintiffs declare: "Goodwin believes Yeakle's should check for guns and identification at the door and there should be only one entrance; nobody checked the back[]door." App. at 149 (citing Goodwin Dep. at 32, 33). In a comparably sparse recitation, Plaintiffs offer the following which is attributable to witness

best community" and he had "hear[d]" that "shootings" had taken place in the area. App. at 291. As for Carter he opined it was a "regular thing" for patrons to have "weapons on them while they've been in the [B]ar." App. at 181-82. And to the question, "You also said from your personal experience that you have seen people in the [B]ar with guns?" Carter responded, "[y]eah, all over town" including the Bar. App. at 185. As for the Marion police department run and investigative reports, covering a period of ten years—from January 1, 2000 to September 1, 2010—the reports reveal police were called to the Bar on average of about three times every two years or so. The vast majority involved reports of fighting or public intoxication. On one occasion in 2006 police noted a report of a suspect in the Bar that "could be 36A and unlicensed."[8] App. at 317. On another occasion in 2005, two persons were standing across the street from the Bar "showing guns to people." App. at 319. And in 2003 police responded to a call of a "shooting victim inside the Sports Bar." App. at 348. However, further investigation revealed "it was a stabbing, and not a shooting," Id., and the assault occurred not in the Bar but in an apartment building located near the Bar. See generally App. at 331-51.

As is apparent from the foregoing recitation, in pressing their respective claims both sides focused on the "facts of the actual occurrence." Goldsberry, 672 N.E.2d at 479. Indeed, the trial court's grant of summary judgment in the Bar's favor was premised on the facts of this particular case. Again, this approach is certainly appropriate in evaluating foreseeability in the context of proximate cause. See Schooley v. Ingersoll Rand, Inc., 631 N.E.2d 932, 937 (Ind. Ct. App. 1994) ("Proximate cause is established if the injury to the plaintiff is a natural and probable consequence of the defendant's act or omission which was, or should have been, reasonably foreseen or anticipated in light of attendant circumstances." (quotation and citations omitted)). And based on the facts as recounted above it is conceivable that a fact-finder would conclude the Bar was not the proximate cause of the Plaintiffs' injuries. That is to say, a fact-finder could very well reach the conclusion that the overwhelming credible evidence demonstrates the proprietors of the Bar—in light of attendant circumstances—could not have anticipated that a

Anthony Adaway—an occasional bartender at the Bar: "Adaway said Yeakle's employs no security, and he acknowledged that R.P.'s Pub [another establishment in the area] is a rough place." App. at 147 (citing Adaway Dep. at 11).

[8] A handwritten notation of unknown origin appearing on the report indicates "36A = armed w/gun." App. at 317.

patron would be armed inside the Bar and would fire a handgun. After all, despite the presumptive shooter's claim to the contrary, no other witness had ever seen anyone with a gun in the Bar before the night he pulled the trigger. And over a ten-year period only once were law enforcement officers dispatched to the Bar on a report of a shooting and that information proved to be inaccurate. On another occasion officers were in the area and apparently received a report that someone in the Bar "could be" possibly armed. The record provides no further details. Of course, a fact-finder evaluating this same evidence could reach the opposite conclusion. In any event, as Goldsberry explains, foreseeability as a component of duty involves a lesser inquiry which "requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." 672 N.E.2d at 479.

The broad type of plaintiff here is a patron of a bar and the harm is the probability or likelihood of a criminal attack, namely: a shooting inside a bar. But even engaging in a "lesser inquiry" we conclude that although bars can often set the stage for rowdy behavior, we do not believe that bar owners routinely contemplate that one bar patron might suddenly shoot another. To be sure, we doubt there exists a neighborhood anywhere in this State which is entirely crime-free. Thus, in the broadest sense, all crimes anywhere are "foreseeable."[9] But to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state. See Delta Tau Delta, 712 N.E.2d at 971. Further such a blanket duty would abandon the notion of liability based on negligence and enter the realm of strict liability in tort which "assumes no negligence of the actor, but chooses to impose liability anyway." Cook v. Whitsell-Sherman, 796 N.E.2d 271, 276 (Ind. 2003). We decline to impose such liability here. In sum we hold that a shooting inside a neighborhood bar is not foreseeable as a matter of law.

---

[9] Plaintiffs make a similar point. In support of their contention that "[t]he risk of harm occasioned by the presence of concealed firearms is foreseeable," Br. of Appellant at 7, Plaintiffs cite sources supporting the proposition that "an individual's right to personally carry a gun with him at all times, provided he is appropriately licensed, creates a problem for a safe society in general." Id. at 6. But this "guns are everywhere" argument, if followed to its logical conclusion, would mean not only business proprietors but also homeowners would be required to protect invitees from otherwise unforeseeable third party criminal assaults. In another opinion handed down today we rejected such a proposition. See Rogers v. Martin, 02S05-1603-CT-114, ___ N.E.3d ___ (Ind. Oct. 26, 2016).

## Conclusion

In a negligence action, whether a duty exists is a question of law for the court to decide. And in those instances where foreseeability is an element of duty, this necessarily means the court must determine the question of foreseeability as a matter of law. When doing so the court is tasked with engaging in a general analysis of the broad type of plaintiff and harm involved without regard to the facts of the actual occurrence. Here, focusing on the facts of this case, the trial court employed a now-discarded analytical tool in determining the question of foreseeability. But we review questions of law *de novo*. Engaging in such review we conclude the trial court properly granted summary judgment in the Bar's favor. We therefore affirm the trial court's judgment.

Rush, C.J., and David, Massa and Slaughter, JJ., concur.