## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Jun 20 2018, 6:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Thomas A. Clements
Law Offices of Thomas A. Clements
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Yolanda Cardona
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tonya Neal,<br>*Appellant-Plaintiff*, | June 20, 2018 |
| | Court of Appeals Case No. 18A-CT-80 |
| v. | Appeal from the Lake Superior Court |
| Gene Franiak d/b/a Gene's Snow Service,<br>*Appellee-Defendant*. | The Honorable John M. Sedia, Judge |
| | Trial Court Cause No. 45D01-1605-CT-99 |

**Brown, Judge.**

[1] Tonya Neal appeals the trial court's entry of summary judgment in favor of Gene Franiak d/b/a Gene's Snow Service and the denial of her motion to correct error. We affirm.

### Facts and Procedural History

[2] Between 9:00 and 9:30 a.m. on March 3, 2015, Neal exited First Midwest Bank ("FMB") on Hohman Avenue in Hammond, Indiana, and fell on the public sidewalk outside the building. In March 2016, Neal filed a complaint against FMB and Franiak alleging that, as she was exiting the bank premises, she "slipped and fell on an area of water and ice located at the entryway of the bank." Appellant's Appendix Volume II at 28. She also alleged that Franiak had been hired by FMB to keep the walkways and entryways of the bank premises free of ice and snow and that her fall occurred as a result of Franiak's failure to do so.

[3] In March 2017, FMB and Franiak filed a joint motion for summary judgment together with a memorandum in support of the motion and a designation of evidence. They argued in part that, even if they owed a duty to Neal, Indiana law does not require the immediate removal of snow and ice. Neal filed a response together with designated evidence and argued in part that Franiak had agreed to clear and salt the area of the walkway where she slipped and fell and that there was an issue of fact as to whether Franiak sufficiently salted the walk or otherwise made a reasonable effort to remove the ice from the walk. FMB and Franiak filed a reply arguing that salt was applied at approximately 7:00 a.m. on the morning of Neal's fall, Neal fell between 9:05 and 9:30 a.m., the

weather had continued to rain, sleet, and drizzle, and they were not given an opportunity to remedy the ice that may have accumulated from 7:00 a.m. until the time of her fall. On May 10, 2017, the court held a summary judgment hearing.[1]

[4] On May 11, 2017, the court issued an order which granted summary judgment to FMB and Franiak finding no disputed facts, that "even when the inferences derived from those facts are strongly construed in Neal's favor, it is clear what happened on that icy March day: Neal stepped out of the Bank, walked a few feet along a public sidewalk, slipped on ice, fell and was injured," and that "[t]here was no evidence designated that [FMB] or Franiak did anything to create a more dangerous condition." *Id.* at 13. Neal filed a motion to correct error, and FMB and Franiak filed a reply. On December 11, 2017, following a hearing,[2] the court issued an order which denied Neal's motion to correct error and provided in part:

> Neal . . . did not present any designated materials that would create a material issue of fact that [Franiak] did not properly clear and salt the sidewalk at 7:00 a.m. on the morning and at the location on the sidewalk where Neal fell, nor breached its duty to exercise reasonable diligence after clearing and salting the sidewalk as it continued to sleet after 7:00 a.m. until Neal's fall between 9:00 a.m. and 9:30 a.m.

---

[1] The record does not include a copy of the transcript of the hearing.

[2] The record does not include a copy of the transcript of the hearing.

*Id*. at 15.

## Discussion

The issue is whether the trial court erred in entering summary judgment in favor of Franiak or abused its discretion in denying Neal's motion to correct error. When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id*. Once these requirements are met, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id*. Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id*. A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We may affirm a trial court's grant of summary judgment upon any theory or basis supported by the designated materials. *Id*. We generally review rulings on motions to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*.

[6] Neal argues that, although Franiak's snow removal log showed that the walk had been shoveled and salted on the morning before the fall and Franiak believed the work was done at around 7:00 a.m., Franiak did not personally witness the performance of the work and stated it could have been done at midnight or a later time prior to the bank opening, that Franiak never inspected the scene of the work or the location of the fall, that she did not see any salt applied to the walkway where she fell, and that no dispute exists as to the presence of the ice. With respect to the claim that Franiak had no duty to immediately remove an accumulation of ice and snow, Neal states that "[o]f course, the issue here is not the immediate duty, but whether [Franiak] exercised reasonable care in the removal and salting of the walkway originally" and that no evidence was "shown of any additional creation of a second snow or ice event between the time of the clearing and [her] fall." Appellant's Brief at 17-18.

[7] Franiak maintains that Neal attempts to rely solely upon the fact that there was ice to prove negligence and that she is merely speculating that he must have failed to do something that caused the ice to form. He argues that, as Neal indicated, "it continued to rain/drizzle with sleet, and snow and the temperature was cold enough to form ice when she fell." Appellee's Brief at 11. He further argues that Neal presented no evidence that he initially cleared the snow and salted the walks in a negligent manner, that she claims he should have gone back to clear and re-salt the walks sometime before 9:00 a.m., and that, even if it was his usual practice to re-inspect the subject property, he had to

be afforded a reasonable opportunity to remove the ice and snow especially if, as Neal states, it continued to drizzle with sleet and icy rain.

[8] To prevail on a claim of negligence the plaintiff must show: (1) a duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Goodwin*, 62 N.E.3d at 386. Whether a duty exists is a question of law for the court to decide. *Id*. at 386-387. A defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Negligence cannot be inferred from the mere fact of an accident. *Id*. Rather, all the elements of negligence must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts. *Id*. An inference is not reasonable when it rests on no more than speculation or conjecture. *Id*. Where the facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003), *reh'g denied*.

[9] To the extent Franiak owed a duty to Neal to perform the ice removal work with reasonable care, we cannot say that the entry of summary judgment was not proper or that reversal is warranted. Franiak and FMB designated evidence which includes a document titled "Scope of Services" and "Snow Removal Specification" which states in part, under the heading "Salting," that "if icy

conditions are present, but plowing is not required, contractor is responsible to spread ice melt or approved material on all concrete and asphalt services to eliminate hazardous conditions" and "all pedestrian traffic areas defined in the site visit . . . are to be completely clean by 7:00AM." Appellant's Appendix Volume II at 80-81. Franiak further designated a Snow Removal Service Log for the FMB location which provided "Date of Service: Mar. 3, 2015," indicated a mark next to the phrase "Shoveling of walks" and stated "Hours Shoveled:_1_," and stated "Number of salting applications – lots_1_" and "Number of salting applications – walks _2_." *Id*. at 82. Under a heading for service notes, the log stated: "Little bit of everything fell this evening. Snow/freezing rain/sleet. Scraped snow/sleet first then salted. Manager (Don) called around 10AM stating someone fell but walks were mostly fine. Sent man out again & salted cleaned & salted walks again. Used 2 bags of CC." *Id*. Franiak also designated an invoice for March 2015 for FMB which listed the dates of service and amounts charged and, for the date of March 3, 2015, stated "Snow & freezing rain/sleet fell. Added salt to all. In AM Manager called in AM stating walks were fine but an injury occurred. Sent man out again to re-salt walks. Don stated walks were fine in AM." *Id*. at 83.

[10] In his deposition, Franiak testified that, if there were two inches or more of snow, he "went out and plowed" and "[u]sually we would do it when the snow stopped, but we would normally have it done by the time the business opened in the morning." *Id*. at 108. When asked if the walks would have been salted before 7:00 a.m., Franiak testified: "Could very well have been. . . . However it

depended on when the snow fell. If it was at midnight, it would have been at midnight. But I believe that particular date it was at 7:00 a.m. or thereabouts." *Id.* at 111. When asked if he recalled whether he or one of his employees did that work, Franiak replied that he did not recall. When asked "[s]o after Don called you are not sure if you sent out there personally or not," Franiak replied "[c]ould have been me, yes" and "[m]aybe it wasn't." *Id.* at 112. When asked if there is a time one has to allow for the salt to melt the snow, he responded affirmatively and testified "[i]t depends on the weather" and "[i]f it is really, really cold; it would take a lot longer for the salt to take effect." *Id.* at 114. When asked "if it continues to snow or continues to rain or sleet . . . [d]o you go back to the property to inspect and reassess whether you need to redo the work," he answered "Absolutely. You have to," and when asked if that was something he did for all of his properties, he replied "[n]ot just the bank, I do it at the malls. I do that at the other companies, yes. I wouldn't be a good businessman if I didn't take care of the customer." *Id.* at 115-116. When asked if he had an opportunity to go back to FMB when this incident occurred, Franiak testified "[a]ctually, no. Because when we got done so early or early in the morning, 7:00 o'clock, around there, by the time that would have taken effect, it would have been already, the bank would have been open," "[a]nd by the time I would have got there would have been maybe between 10 and 11, if I would normally go back," and "[b]ut it didn't snow anymore, why would I want to go back?" *Id.* at 116. He also testified: "The manager of the bank called approximately 9:30, 10:00 o'clock, I guess, and said someone had fell.

Didn't tell me who it was.  Didn't tell me if there was any injury or if there was – he did tell me that he took no exception to the walk."  *Id.*

[11]  In her deposition, Neal testified that the incident occurred between 9:05 and 9:30 after she exited FMB.  When asked what the weather was like the day of the incident, Neal testified "[i]t was like rainy like drizzling, like what you call it, sleeting, yeah, like that, icy rain."  *Id.* at 39.  When asked if she knew whether it had snowed the day before the incident, she answered "[i]t was basically like that icy rain the day before."  *Id.*  When asked if "it was snowing at the time that [she was] headed to the bank," Neal replied "[i]t wasn't snowing," and when then asked "[w]as it that sleet that you're talking about," she answered "[t]hat sleet, yep, that rainy --."  *Id.*  When asked if she knew if there was an accumulation of snow on the ground, Neal said "[n]o," and when asked if it was cold enough for ice to form, she replied affirmatively.  *Id.*  When asked how she traveled to FMB, Neal testified she took the bus, and when asked if she had walked to a bus stop, she answered "Yes.  I go to the bus stop from my house.  I catch the 3:15.  It takes me to State Line.  Once I get to State Line, I got to cross the street and then I got to cross another street before I get to the bank."  *Id.* at 103.  When asked about the distance from where the bus dropped her off to the bank, she testified "[i]t's more than a block.  Maybe a block-and-a-half, close to two blocks," and that she walked that distance.  *Id.*  She stated, "[w]hen I got off the bus, and they had snow piled up this high but it was pushed all to the side and that part is clear," "I come through there it's clear," "[a]nd then you have another parking lot you go through, that snow is

clear," and "then I crossed the street and I went to the bank." *Id*. at 104. When asked if she had walked by the location where she fell before she entered FMB, Neal answered "no," and when asked where she was planning to go when she fell, she answered "[g]oing to go back up to Hohman across the street to catch the bus." *Id*. at 42. When asked if, after she fell, she looked at the ground to see what caused her to fall, Neal replied affirmatively and stated "[i]t was ice because the guy tried to help me up and he was sliding." *Id*. at 43. When asked if she saw salt on the surface, she answered "[n]o." *Id*. at 44. When asked "[w]as there any type of water or melted ice anywhere near you where you fell," Neal answered "[i]t was frozen ice," and when asked "[c]ompletely frozen," she replied "[y]es." *Id*. When asked "[w]as it still snowing when you fell," Neal answered: "It was snowing. It was like ice and it froze. So it rain and it froze." *Id*. When asked how long she was in the bank, she responded "[m]aybe like about the seven, eight minutes, ten minutes." *Id*.

[12] In sum, the designated evidence reveals that Franiak's snow removal service log indicates that the walk outside of the FMB building was scraped and then that salt was applied on the morning of March 3, 2015, that Franiak believed the work was performed "at 7:00 a.m. or thereabouts," that Neal exited the bank between 9:05 and 9:30 a.m. and fell on the walk, and that Franiak received a call around 10:00 a.m. reporting that someone had fallen. *Id*. at 111. According to Neal, it was drizzling or "sleeting . . . that, icy rain" outside on the day of her fall and that it was cold enough for ice to form. *Id*. at 39. Franiak testified, when asked if he had an opportunity to return to FMB prior

to the incident, that he did not and that it would have been between 10:00 and 11:00 a.m. by the time he would have arrived there. Franiak was not made aware of any accumulated ice on the sidewalk after 7:00 a.m. and prior to Neal's fall and, even if Franiak had been made aware that ice had formed or the walk became slick during that time, he was not afforded a reasonable opportunity to treat the walk again prior to the time of Neal's fall. Accordingly, we conclude that Franiak did not breach any duty he owed to Neal.

## *Conclusion*

[13] For the foregoing reasons, we affirm the entry of summary judgment in favor of Franiak and the denial of Neal's motion to correct error.

[14] Affirmed.

Bailey, J., and Crone, J., concur.