

**FILED**

Nov 29 2023, 9:17 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

James J. O'Connor, Jr.
Carta H. Robison
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Mark R. McKinney
Vincent Walker
McKinney & Company Law
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony A. Brummett, Cheers, Inc., Terry Lee Orrick, and John Doe,

*Appellants-Defendants*,

v.

Brian Bailey,

*Appellee-Plaintiff*.

November 29, 2023

Court of Appeals Case No. 23A-CT-683

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Timothy R. Hollems, Master Commissioner

Trial Court Cause No. 18C04-2112-CT-150

**Opinion by Judge Brown**
Judges Vaidik and Bradford concur.

**Brown, Judge.**

[1] Anthony A. Brummett, Cheers, Inc., ("Cheers"), and Terry Lee Orrick (collectively, "Appellants")[1] appeal the trial court's interlocutory order denying their motion for summary judgment. We reverse.

*Facts and Procedural History*

[2] On the evening of January 4, 2020, into the early morning of January 5, 2020, Brian Bailey, Lauren Segura, and Nelson Segura were at Cheers, a bar located in Muncie, Indiana. While seated at the bar, Bailey grabbed Lauren between her thighs, Nelson responded by grabbing him by his shirtfront and pushing him off his bar stool, and Bailey fell to the ground.

[3] On December 26, 2021, Bailey filed a complaint claiming that Nelson "perpetrated an assault" against him. Appellants' Appendix Volume II at 12. The complaint also alleged Appellants were "willfully negligent, wantonly reckless and grossly negligent because of their or their employees' acts, failures to act, and/or refusal to help [Bailey] on the night of the incident." *Id.* at 13.

[4] On August 23, 2022, Appellants moved for summary judgment asserting that the individual defendants were not liable and Cheers did not owe a duty to Bailey to protect him from the unforeseeable act of a third party. The designated evidence included Lauren and Nelson's depositions, an affidavit by Brummett, and two surveillance video recordings of the incident. Brummett's

---

[1] John Doe, later identified as Nelson Segura, did not join in the motion for summary judgment.

affidavit stated that he controls all shares of Cheers through purchase and assignment, he is purchasing Cheers, "all furnishings, fixtures, equipment, merchandise, inventory, furniture, supplies, Indiana Alcoholic Beverage Permit No. RR18-07633, and all other personal property related to the operation" and the associated real estate "on land contract, whereby Orrick financed the purchase and [he] make[s] monthly installment payments to Orrick beginning May 1, 2011, pursuant to the terms and conditions of that certain Promissory Note dated March 18, 2011." *Id.* at 44. He operates Cheers as manager "pursuant to the Management Agreement," he is "responsible for the operation and control of the assets of [Cheers]," "[a]s a shareholder of [Cheers], [he does] not operate [it] in [his] personal capacity," and Cheers "operates as an independent business structure and observes the corporate formalities." *Id.* at 45. On November 20, 2022, Bailey filed a response.

On January 27, 2023, the trial court issued an Order Denying Defendant's [sic] Motion for Summary Judgment, finding that "[g]iven that a potentially unjust or illegal act occurred on the property of [Cheers] and Brummett is the bar manager, summary judgment on this issue is inappropriate," Nelson had worked for Brummett's Plumbing for about ten years, foreseeability is a fact-specific inquiry, and whether Cheers timely intervened was a question of fact for the fact finder. *Id.* at 9-10.

## Discussion

Appellants argue there is no genuine issue of material fact which supports piercing the corporate veil and holding Brummett and Orrick liable or finding

that Cheers had a duty to care for Bailey because the actions of Nelson were not foreseeable. They claim the trial court "erred by focusing on facts that were immaterial in the analysis for determining whether a landowner has a duty to protect an invitee from criminal acts of a third party." Appellants' Brief at 11. Appellants further contend that Bailey did not present evidence establishing that Cheers owed him a duty to prevent the exacerbation of his injuries. Bailey argues that piercing the corporate veil is a fact-intensive inquiry best left to the finder of fact and that "there exists a genuine dispute of material fact regarding whether the corporation was used to promote fraud, injustice, or illegal activity." Appellee's Brief at 9. He claims the acts were foreseeable and that Appellants had a duty to prevent further injury because they knew Bailey was injured.

[7] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.2d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a prima facia showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of the genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial

court. *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 973 (Ind. 2001).

[8] Generally, a shareholder is not personally liable for the acts of the corporation. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994) (citation omitted). "While an Indiana court will impose personal liability to protect innocent third parties from fraud or injustice, the burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Id.* (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994)). "When a corporation is functioning as an alter ego or a mere instrumentality of an individual or another corporation, it may be appropriate to disregard the corporate form and pierce the veil." *Blackwell v. Superior Safe Rooms LLC*, 174 N.E.3d 1082, 1092 (Ind. Ct. App. 2021).

> "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Stacey–Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind. Ct. App. 1988). When determining whether a shareholder is liable for corporate acts, our considerations may include: (1) undercapitalization of the corporation, (2) the absence of corporate records, (3) fraudulent representations by corporation shareholders or directors, (4) use of the corporation to promote fraud, injustice, or illegal activities, (5) payment by the corporation of individual obligations, (6) commingling of assets and affairs, (7) failure to observe required corporate formalities,

and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Aronson*, 644 N.E.2d at 867. In addition, when "a plaintiff seeks to pierce the corporate veil in order to hold one corporation liable for another closely related corporation's debt, the eight *Aronson* factors are not exclusive." *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1192 (Ind. Ct. App. 2002), *trans. denied*. Additional factors to be considered include whether: "(1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the [organizations] were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards." *Id.* (footnote omitted).

* * * * *

Piercing the corporate veil involves a highly fact-sensitive inquiry that is not typically appropriate for summary disposition.

*Reed v. Reid*, 980 N.E.2d 277, 301-302 (Ind. 2012).

[9] The designated evidence reveals that Brummett owned Cheers and was employed by Cheers as the bar manager. Orrick had sold Cheers to Brummett, and Brummett was still making monthly installment payments to Orrick in connection with the sale. Brummett's affidavit also stated that he does not operate Cheers in a personal capacity and that Cheers "operates as an independent business structure and observes the corporate formalities." *Id.* at 45. The evidence does not demonstrate that Brummett or Orrick were present for the interaction between Bailey, Lauren, and Nelson. Nelson had previously installed cameras for Cheers and worked for Brummett for ten years doing

plumbing and construction. We cannot say, in light of the factors in *Reed*, that the designated evidence supports piercing the corporate veil.

[10] To the extent Brummett argues that Cheers did not owe Bailey a duty of care because the attack was not foreseeable, we note that we recently discussed foreseeability in *Singh v. Singh*, 155 N.E.3d 1197 (Ind. Ct. App. 2020), which discussed the Indiana Supreme Court's holding in *Cavanaugh's Sports Bar & Eatery, Lt. v. Porterfield*, 140 N.E.3d 843 (Ind. 2020). Specifically, in *Singh*, we held:

> Landowners must "take reasonable precautions to protect invitees from foreseeable criminal attacks." *Rogers v. Martin*, 63 N.E.3d 316, 326 (Ind. 2016) (citation omitted). Ascertaining whether this duty extends to "the criminal act at issue," *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 389 (Ind. 2016), in a "particular scenario," *Rogers*, 63 N.E.3d at 320, hinges on the foreseeability of the attack, requiring "a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm," *id.* at 325. When considering these categories, courts should determine whether the defendant knew or had reason to know of any present and specific circumstance that would cause a reasonable person to recognize the probability or likelihood of imminent harm.
>
> Under the criminal act at issue in this particular scenario, Cavanaugh's owed no duty to protect its patron from the sudden parking lot brawl when no evidence shows that Cavanaugh's knew the fight was impending. Because we continue to decline to impose a comprehensive "duty on proprietors to afford protection to their patrons" from unpredictable criminal attacks, *Goodwin*, 62 N.E.3d at 394, we reverse and remand.

* * * * *

Further, the Court addressed evaluating the "broad class of plaintiff" and the "broad type of harm" in these cases and acknowledged that, when it did so in these cases,

> a key factor is whether the landowners knew or had reason to know about any *present and specific circumstances* that would cause a reasonable person to recognize the probability or likelihood of *imminent harm*. *See Goodwin*, 62 N.E.3d at 385 (noting that, just before the barroom shooting, all the parties were separately "socializing" at "the small establishment"); *Rogers*, 63 N.E.3d at 319 (remarking that the homeowner observed that her co-host was, before attacking a house-party guest, "just 'being normal,' and it was not obvious to her that he had 'a buzz going'" from drinking alcohol); *id.* (observing that, before the guest was found dead outside her home, the homeowner saw him "lying motionless on the basement floor with his eyes closed"). If landowners had reason to know of any imminent harm, that harm was, as a matter of law, foreseeable in the duty context. *See, e.g.*, *id.* at 327 (holding that it was foreseeable "that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries"). In the years since *Goodwin* and *Rogers*, courts have thoughtfully applied this framework, finding duty *only when landowners had this contemporaneous knowledge*.

* * * * *

The Court's 3-2 majority opinion seems to instruct both narrowing the review of whether a duty is foreseeable and limiting when a duty is found to exist.

> By pointing to police runs made to the bar during the year before the quarrel, Porterfield improperly substitutes evidence of the bar's past raucousness for contemporaneous knowledge of imminent harm. We

repeat, this type of historical evidence, while "appropriate in evaluating foreseeability in the context of proximate cause," should play no role when we evaluate "foreseeability as a component of duty." *Goodwin*, 62 N.E.3d at 393. Considering prior reports of the bar's unruliness shifts our common law jurisprudence back into a recently supplanted totality analysis and risks fabricating a duty when harm is merely "sufficiently likely." *Id.* at 392 (quotation omitted). A landowner's present knowledge, however, more conclusively elevates the knowledge of risk to "some probability or likelihood of harm," *id.*, allowing courts to continue to find a duty when "reasonable persons would recognize it and agree that it exists," *Rogers*, 63 N.E.3d at 325.

[*Cavanaugh's*, 140 N.E.3d at 843-844].

In a separate opinion in which Justice David joined, Justice Goff dissented and disagreed with adding new requirements to the foreseeability inquiry that "elevat[ed] the standard to impose a duty." *Cavanaugh's*, 140 N.E.3d at 844 (Goff, J., dissenting). He further observed that the "majority also relie[d] on the particular facts of this case" including "the lack of tension in the bar, noting that 'for hours before the fracas, [the plaintiff] and his friend socialized with bartenders and had no animosity with any other customers.'" *Id.* at 846 (quoting majority op. at 843). Accordingly, it appears that, in practice, an examination of particular facts is necessary to fully resolve the question of duty at this stage and to properly apply *Cavanaugh's* required "foreseeability as a component of duty" analysis. *See* 140 N.E.3d at 844 (majority op.).

*Singh*, 155 N.E.3d at 1204-1205, 1207-1208 (citing *Cavanaugh's*, 140 N.E.3d at 837-838, 843-844) (footnote omitted).

The record reveals that Nelson had previously worked for Brummett for approximately ten years doing plumbing and construction work. The evidence does not demonstrate that Brummett was at Cheers on the night in question. A DJ was playing in the bar, in which there were "a bunch of people." Appellants' Appendix Volume II at 39. There were two staff members serving drinks at the bar, and the evidence does not demonstrate that they were familiar with Nelson. Bailey stated to Nelson that Bailey was drunk and "a pervert" to Nelson, and Nelson laughed off the statement and turned around because he did not wish to speak to Bailey. *Id.* at 40. Thirty to forty minutes later, Bailey grabbed Lauren between her legs, Nelson responded by grabbing Bailey's shirtfront, Nelson pushed Bailey off the stool, and Bailey fell to the ground. Nelson pushed Bailey off the stool approximately fifteen seconds after Bailey grabbed Lauren. We cannot say that Appellants had notice of present and specific circumstances that would cause a reasonable person to recognize the risk of an imminent criminal act, or that Nelson pushing Bailey off a bar stool was foreseeable. *See Cavanaugh's*, 140 N.E.3d at 843 (finding that Cavanaugh's could not foresee a patron blinding another in a sudden parking lot fight because it had no reason to believe a fight would occur due to it occurring suddenly and without warning); *Goodwin*, 62 N.E.3d at 393-394 ("although bars can often set the stage for rowdy behavior, we do not believe that bar owners routinely contemplate that one bar patron might suddenly shoot another. . . . But to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state.").

[12] With respect to Brummett's argument that a question of fact does not exist as to whether Cheers staff had a duty to intervene to prevent further injury, we note that in *Rogers v. Martin*, the Indiana Supreme Court analyzed a homeowner's duty to take precautions to prevent a co-host from fighting with and injuring a house-party guest separately from the homeowner's duty to a social guest "to protect him from the exacerbation of an injury occurring in her home," after finding him unconscious on her floor. 63 N.E.3d 316, 327 (Ind. 2016).

[13] The designated evidence reveals that the staff of Cheers witnessed Bailey after he had been pushed to the floor. Lauren stated in her deposition that after Nelson grabbed Bailey, "he went down and, like, the whole crowd just went — everybody just, like, gathered. That's all I know. I didn't see what happened." Appellants' Appendix Volume II at 36. The video recording reveals that after Nelson pushed Bailey off the stool, Bailey lay on the floor, patrons at the bar gathered around Bailey, and two bartenders saw the commotion, looked over the bar counter at Bailey on the ground, and saw people checking on him. Exhibit D at 1:04, 1:28-1:35. One of the bartenders exited the frame and reappeared next to Bailey, either speaking with or examining him. *Id.* at 1:45-1:55. The other bartender exited the frame and similarly reappeared and can be seen either examining or speaking with Bailey. *Id.* at 2:10-2:45. Bailey designated no evidence in response to the motion for summary judgment. Because there is no designated evidence that Bailey suffered an injury, we cannot say that Appellants owed Bailey a duty to prevent further harm. *See Rose v. Martin's Super Markets LLC*, 120 N.E.3d 234, 244 (Ind. Ct. App. 2019)

(holding grocery store had no duty to take action to prevent exacerbation of customer's injuries where store had knowledge of active shooter but had no knowledge of customer's injuries inflicted by shooter until it was too late to offer her assistance), *trans. denied*.

[14] For the foregoing reasons, we reverse the trial court's denial of Appellants' motion for summary judgment.

[15] Reversed.

Vaidik, J., and Bradford, J., concur.