

**FILED**

Jan 18 2019, 7:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

J. Thomas Vetne
Amanda N. Zaluckyj
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE

Benjamen W. Murphy
Griffith, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Buddy & Pals III, Inc., Buddy & Pals II, Inc., Buddy & Pals Inc., Timothy Heidbreder, and William Frank Bailey, Jr., | January 18, 2019 |
| *Appellants-Defendants,* | Court of Appeals Case No. 18A-CT-1811 |
| v. | Appeal from the Lake Superior Court |
| Christopher Falaschetti, | The Honorable Bruce D. Parent, Judge |
| *Appellee-Plaintiff* | The Honorable Steven King, Senior Judge |
| | Trial Court Cause No. 45D04-1410-CT-186 |

**Crone, Judge.**

# Case Summary

Shortly after he was ejected via the back door of Buddy & Pals sports bar for fighting, William Frank Bailey, Jr., punched Christopher Falaschetti outside the front entrance. Falaschetti filed a personal injury action against Buddy & Pals III, Inc., Buddy & Pals II, Inc., Buddy & Pals Inc., owner Timothy Heidbreder (collectively "Buddy & Pals"), and Bailey.[1] In this interlocutory appeal, Buddy & Pals challenges the denial of its motion for summary judgment on Falaschetti's negligence claim. Finding that Buddy & Pals failed to establish as a matter of law that it did not owe Falaschetti a duty to protect him from Bailey's criminal act, we affirm the denial of summary judgment.

# Facts and Procedural History

One night in January 2013, Falaschetti was socializing with friends at Buddy & Pals sports bar while waiting for his girlfriend to finish a work-related promotional event there. Bailey also was at Buddy & Pals that night with his fiancée and consumed numerous alcoholic beverages over a three-hour period. At one point, Bailey saw a man talking to his fiancée, so he approached and placed his hand on the man's shoulder. The man threw Bailey to the ground, and Buddy & Pals' bouncers intervened. A bouncer known as Joe put Bailey in a chokehold. Bailey forcibly tried to pull away to get to the man who had shoved him. He described himself as "a danger" to Joe and to everyone in his

---

[1] Falaschetti asserted intentional tort and negligence claims against Bailey. Bailey was not a party to Buddy & Pals' summary judgment motion and is not participating in this interlocutory appeal.

way. Appellants' App. Vol. 3 at 19. Joe ejected Bailey via the back door and threw him to the pavement. The other man was briefly detained pending Bailey's departure and then ejected via the front door. Bailey approached the back door again, but another bouncer punched him in the eye and slammed the door. Concerned that Bailey might try to re-enter through the front entrance, Joe apprised the front-area bouncers of the situation. About a minute later, Bailey rounded the corner toward the front of the building in search of the man who had initially shoved him.

[3] Meanwhile, Falaschetti and his girlfriend exited the bar via the front door. Believing Falaschetti to be the man who had shoved him, Bailey punched Falaschetti, causing him to suffer a broken jaw, severe headaches, dizziness, neck pain, and optic nerve inflammation. Bailey initially panicked and fled, but when he heard someone shout that he had hit the wrong guy, he returned and was arrested.

[4] In January 2015, Falaschetti filed a personal injury action against Buddy & Pals and Bailey. After extensive discovery, Buddy & Pals filed a motion for summary judgment as to Falaschetti's negligence claim,[2] asserting that it owed Falaschetti no duty to protect him from Bailey's criminal act. The trial court conducted a hearing and issued an order denying Buddy & Pals' summary judgment motion. Buddy & Pals sought and was granted certification of the

---

[2] In his complaint, Falaschetti asserted claims against Buddy & Pals for negligence, gratuitous assumption of duty, and Dram Shop Act violations. Buddy & Pals' motion for summary judgment addresses only the negligence claim (Count IV). We therefore limit our discussion accordingly.

order for interlocutory appeal, and we accepted jurisdiction. Additional facts will be provided as necessary.

## Discussion and Decision

[5] Buddy & Pals challenges the denial of its motion for summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the same standard as the trial court and drawing all reasonable inferences in favor of the nonmoving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated at the summary judgment stage. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011).

[6] Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, the nonmoving party must "come forward with contrary evidence" showing a genuine issue for the trier of fact. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009).

[7] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the nonmoving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*.

"Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

[8] To prevail on a negligence claim, the plaintiff must demonstrate "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Id*. (quoting *King. v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Indiana Equip. Co.*, 601 N.E.2d 398, 402 (Ind. Ct. App. 1992), *trans. denied* (1993).

[9] Buddy & Pals specifically asserts that as a matter of law, it owed no duty to protect Falaschetti against Bailey's criminal act. The issue of "whether a duty exists is a question of law for the court to decide." *Goodwin*, 62 N.E.3d at 389. "[A]s a component of duty, foreseeability must be determined by the court[.]" *Id*. at 390. "Proprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises." *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1052 (Ind. 2003). This includes protecting invitees from reasonably foreseeable criminal acts. *Id*. at 1053. In fact, "[w]here a premises liability claim is based on activities on the land [rather than a condition of the land], foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue." *Certa v. Steak 'n Shake*

*Operations Inc.*, 102 N.E.3d 336, 340 (Ind. Ct. App. 2018) (quoting *Rogers v. Martin*, 63 N.E.3d 316, 325 (Ind. 2016)), *trans. denied*.

[10] "[F]or purposes of determining whether an act is foreseeable in the context of duty we assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Goodwin*, 62 N.E.3d at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). This involves a "more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id.* at 393 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied* (1999)).

[11] Buddy & Pals relies on *Goodwin* as support for finding no duty to protect the plaintiff against the harm suffered. In *Goodwin*, one bar patron thought he overheard another patron making a derogatory remark about his wife. 62 N.E.3d at 385. In his anger, he pulled out a handgun and fired at the other patron, striking him and his two companions. *Id.* Reasoning that bar owners do not "routinely contemplate that one bar patron might suddenly shoot another[,]" our supreme court held "that a shooting inside a neighborhood bar is not foreseeable as a matter of law." *Id.* at 393-94. *Goodwin* is similar to the present case in some respects. Both cases involve the same broad type of plaintiff, a bar patron. To the extent that Buddy & Pals suggests that Falaschetti falls into the category of "a complete stranger" to the assailant, we find this too narrow an application. Appellants' Br. at 13. Both *Goodwin* and the present case involve harm related to an *activity* on the land, a criminal

attack. Nevertheless, in analyzing foreseeability, i.e., the probability or likelihood of the criminal attack, we must look at the nature of the attack. *Goodwin* involved one patron suddenly shooting other patrons inside the bar. In contrast, here, a pugnacious patron ejected for fighting punched another patron exiting the bar by the other door. We believe this is the type of "rowdy behavior … that bar owners routinely contemplate." *Goodwin*, 62 N.E.3d at 394. The fact that Buddy & Pals had several bouncers on duty inside the bar and an off-duty officer patrolling the parking lot underscores the foreseeability of these types of occurrences.

[12] We find this case more akin to the *Steak 'n Shake* cases, where employees observed escalating agitation among patrons, had reason to anticipate that a physical altercation might ensue, and therefore had a duty to take reasonable steps to protect the patrons. *See Certa*, 102 N.E.3d at 337-38 (reversing summary judgment for restaurant on issue of duty where patrons informed restaurant employees of physical altercations in parking lot, restaurant did not take steps to avoid further violence, and tensions escalated to where one patron struck another patron with her vehicle); *see also Hamilton v. Steak 'n Shake Operations Inc.*, 92 N.E.3d 1166, 1167 (Ind. Ct. App. 2018) (reversing summary judgment for restaurant on issue of duty where restaurant employees observed escalating tensions between two groups of patrons, did not intervene or contact security or police, and plaintiff was shot inside restaurant), *trans. denied*.

[13] "[W]hat the landowner knew or had reason to know is a pivotal consideration in determining foreseeability[.]" *Certa*, 102 N.E.3d at 341. Here, Buddy &

Pals, through its bouncers, knew that Bailey – a large,[3] angry, and visibly inebriated patron – had vigorously resisted them as they attempted to defuse the tensions between him and the man who shoved him. The bouncers also knew that he had approached the back entrance again after being ejected, prompting one of the bouncers to punch him and slam the door. They also anticipated that he would go around the building to the front entrance, which precipitated Joe's warning to the bouncers up front.

[14] In sum, Buddy & Pals, through its bouncers, knew that Bailey was a loose cannon who was not taking his ejection well and was in a fighting mood. As such, Buddy & Pals had a duty to take precautions to protect its other patrons, including Falaschetti, from further violent attacks by Bailey on the bar's premises.[4] This is not to say that Buddy & Pals breached its duty to protect Falaschetti; that will be a determination for the trier of fact once presented with evidence of the detailed circumstances of this case. Based on the foregoing, we conclude that Buddy & Pals failed to establish as a matter of law that it owed Falaschetti no duty to protect him from Bailey's attack. Accordingly, we affirm the trial court's denial of Buddy & Pals' motion for summary judgment.

---

[3] Bailey testified by deposition that he is six feet two inches tall and weighed approximately 225 pounds in January 2013. Appellants' App. Vol. 3 at 28.

[4] Buddy & Pals also relies on mistaken identity, i.e., the fact that Bailey struck the wrong patron, as support for a finding that foreseeability was lacking. *See* Appellants' Br. at 13 ("In fact, [Bailey] didn't even foresee his actions"). We find this argument to be a nonstarter, as we assess foreseeability in terms of whether the type of harm to any of its patrons was foreseeable to the landowner/proprietor.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.