

FILED

Aug 16 2019, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James G. Pittman
Michelle L. Woodward
Pittman Law Firm
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Lonnie D. Johnson
Stephanie A. Halsted
Clendening Johnson & Bohrer,
P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donna J. Hamilton,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Robert D. Hamilton,<br>*Appellee-Respondent* | August 16, 2019<br><br>Court of Appeals Case No.<br>19A-DN-96<br><br>Appeal from the Monroe Circuit<br>Court<br><br>The Honorable Valeri Haughton,<br>Judge<br><br>Trial Court Cause No.<br>53C08-1706-DN-263 |

**Crone, Judge.**

## Case Summary

Donna J. Hamilton ("Wife") appeals a summary judgment entered in favor of the estate ("the Estate") of her deceased ex-husband, Robert D. Hamilton ("Husband"). The dispute concerns the ownership of Husband's portion of his individual retirement account ("IRA")[1] following a fifty-fifty split entered pursuant to the couple's dissolution settlement agreement. Wife asserts that the trial court erred in not striking certain portions of two affidavits included in the Estate's designated materials, in granting the Estate's motion for summary judgment, and in denying her motion for summary judgment. We affirm.

## Facts and Procedural History

Husband and Wife were married in 1986. In June 2017, Wife filed a petition to dissolve the marriage. That summer, Husband contacted his financial planner, Thomas Rillo, seeking information regarding the steps necessary for changing his designated IRA beneficiary from Wife to his two daughters. Rillo informed Husband that he would need to bring in a copy of his dissolution decree to accomplish the change.

On September 29, 2017, the parties executed a "Contract and Agreement" ("the Agreement"), which was incorporated into and attached to the October 2, 2017 dissolution decree. As it relates to Husband's IRA, the Agreement specifies an

---

[1] Many of the filed documents refer to Husband's IRA as a single account. In fact, his IRA comprises two accounts, both of which include identical beneficiary designations.

"account balance of $389,482.78 as of August 31, 2017" and states, "Wife shall be entitled to 50% of Husband's retirement account as of August 31, 2017 in the amount of $194,741.39." Appellant's App. Vol. 2 at 14-15. The Agreement ordered that Husband take all necessary steps to separate out Wife's portion within thirty days of the decree.

[4] On October 9, 2017, Husband and his friend, Marsha Keith, drove to Rillo's office with a copy of Husband's dissolution decree, per Rillo's previous instructions. The office was closed due to a Monday holiday, so they returned the next day. Husband asked to see Rillo but learned that Rillo was on vacation. He left a copy of the dissolution decree with office personnel. The next day, he was critically injured in an accident. He died of his injuries the following day, October 12, 2017. Shortly thereafter, the Estate was opened in a different county, and one of Husband's daughters was appointed personal representative. In November 2017, Wife filed a claim against the Estate to preserve her sum-certain share of the IRA in the event it was a probate asset.

[5] On December 21, 2017, Wife filed a motion for a temporary restraining order ("TRO") and preliminary injunction. She claimed that Husband had died before separating out her share of the IRA, that she had "learned on December 20, 2017 that [Husband] changed his beneficiary designation on the above … IRA account from [Wife] to [Husband's] daughters after the divorce was filed," and that she had filed a claim with the Estate and had not yet received her fifty-percent share of Husband's IRA pursuant to the Agreement. *Id*. at 17-18. She asked that the trial court enjoin both the Estate from submitting any claims

regarding the IRA funds and Rillo's office from processing or distributing any such funds pending a hearing. The court granted her motion for a TRO and emergency hearing.

[6] On December 28, 2017, Wife filed a motion to compel distribution of her $194,741.39 of Husband's IRA funds. She later filed a motion to extend the TRO and request for hearing, which the trial court granted. After a hearing on Wife's motions, the trial court issued an order granting Wife's motion to compel the distribution of $194,741.39 from the IRA. The court indicated that Wife had recently learned and informed the court that Husband had never fully executed his change of designated IRA beneficiary to his daughters. As a result, Wife claimed that she was entitled to the balance of Husband's IRA funds. The parties agreed to freeze the IRA balance pending a declaratory judgment as to the ownership of the funds. They also agreed that the trial court would retain jurisdiction.

[7] In February 2018, the Estate filed a motion for summary judgment accompanied by a memorandum and designated materials, which included affidavits executed by Rillo and Keith. On April 2, 2018, Wife filed materials in opposition to the Estate's motion as well as her own motion for summary judgment, with a motion to strike portions of Rillo's and Keith's affidavits. The Estate filed materials in response, which included Keith's amended affidavit.

On December 17, 2018, the trial court issued an order granting summary judgment in favor of the Estate. Wife now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court did not commit reversible error in implicitly denying Wife's motion to strike portions of Husband's designated affidavits.

We first address Wife's contention that the trial court abused its discretion in not granting her motion to strike certain portions of the Estate's designated affidavits. The trial court has broad discretion in ruling on motions to strike in the summary judgment context. *Szamocki v. Anonymous Doctor & Anonymous Grp.*, 70 N.E.3d 419, 429 n.7 (Ind. Ct. App. 2017), *trans. denied*. Its decision will not be reversed unless prejudicial error is clearly demonstrated. *Devereux v. Love*, 30 N.E.3d 754, 766 (Ind. Ct. App. 2015), *trans. denied*.

As a preliminary matter, we address Wife's assertion that the trial court erred in not issuing a specific ruling on her motion to strike. Although the trial court should have issued a specific ruling on Wife's motion to strike, we do not believe that its failure to do so amounts to reversible error. *See Palmer v. State*, 173 Ind. App. 208, 213, 363 N.E.2d 1245, 1248 (1977) (court's failure to rule specifically on party's motion to strike affidavits held to be harmless error). A trial court is presumed to know and follow the applicable law. *Tharpe v. State*, 955 N.E.2d 836, 842 (Ind. Ct. App. 2011), *trans. denied*. This would include its duty to disregard any inadmissible information included in an affidavit.

*Bankmark of Florida, Inc. v. Star Fin. Card Servs., Inc.*, 679 N.E.2d 973, 980 (Ind. Ct. App. 1997). Thus, the trial court's inaction on Wife's motion to strike operates as an implied denial. *See Palmer*, 173 Ind. App. at 213, 363 N.E.2d at 1248 (grant of summary judgment absent specific ruling on motion to strike held to amount to implied overruling/denial of motion to strike).

### 1.1 – Thomas Rillo's Affidavit

[11] Wife moved to strike paragraphs 6 and 7 and a portion of paragraph 8 of Rillo's affidavit, which include the following averments:[2]

> 6. In August 2017, Husband contacted my office about separating the funds in his IRA accounts and changing the primary beneficiary on his accounts from his then-spouse, Wife, to his daughters. He advised that he and Wife were divorcing.

> 7. My office advised Husband that we would require a divorce decree in order to make the changes he requested.

> 8. On October 10, 2017, ... My staff advised him that I was on a planned vacation but would contact him upon my return.

Appellant's App. Vol. 2 at 83.

[12] In her motion to strike, Wife asserted that Rillo lacked personal knowledge of matters asserted therein and that the challenged statements amounted to

---

[2] In their affidavits, Rillo and Keith referred to Husband and Wife by their proper names. For consistency's sake, we refer to them as Husband and Wife.

inadmissible hearsay.  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Ind. Evidence Rule 801(c).  Unless otherwise provided by law or in our evidence rules, hearsay is inadmissible.  Ind. Evidence Rule 802.

[13]  With respect to affidavits designated in support of or opposition to summary judgment, Indiana Trial Rule 56(E) provides in part that they "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Because the court may consider only admissible evidence when ruling on a motion for summary judgment, inadmissible hearsay statements cannot create a genuine issue of material fact.  *Hays v. Harmon*, 809 N.E.2d 460, 465-66 (Ind. Ct. App. 2004), *trans. denied*.

[14]  Wife claims that Rillo did not have personal knowledge as to the challenged statements.  Essentially, she claims that the phrases "My office" and "My staff" are insufficient to demonstrate Rillo's personal knowledge.  We disagree. "Under the rule of imputed knowledge, 'the law imputes the agent's knowledge to the principal.'"  *BGC Entm't, Inc. v. Buchanan ex rel. Buchanan*, 41 N.E.3d 692, 701 (Ind. Ct. App. 2015) (quoting *Southport Little League v. Vaughn*, 734 N.E.2d 261, 274 (Ind. Ct. App. 2000), *trans. denied* (2001)), *trans. denied*.  This means that "knowledge of material facts acquired by an agent in the course of the agent's employment and within the scope of his authority, is the knowledge of the principal."  *Id.* at 702 (quoting *Southport Little League*, 734 N.E.2d at 275).  This agency rule is grounded in the legal principle that it is the agent's duty "to

disclose all material facts … and upon the presumption that he has discharged that duty." *Id*. According to agency principles, for purposes of knowledge, Rillo and his staff members are one.

[15] Moreover, the designated materials indicate that Rillo was Husband's personal financial advisor and was keenly familiar with the operations of his office. *See* Appellant's App. Vol. 2 at 83 (unchallenged paragraph 9 of Rillo's affidavit stating, "Per my established practices and procedures"); *see also French v. Hickman Moving & Storage*, 400 N.E.2d 1384, 1387 (Ind. Ct. App. 1980) (averments of familiarity with operations of business were sufficient to show requisite knowledge of office practices). He knew about Husband's desire to change his beneficiary designations to his daughters and knew the steps that Husband needed to take to accomplish those changes. He obviously knew that he himself was out of the office due to vacation and knew that Husband in fact had left a copy of the dissolution decree as previously instructed. *See* Appellant's App. Vol. 2 at 84 (unchallenged averment that by dropping off decree, Husband had done all he could to effect beneficiary change). The fact of Rillo's absence was not offered to prove the truth of the matter asserted, i.e., whether Rillo had actually gone on vacation. Nor was the statement that Rillo would call Husband offered to prove that he actually would have done so upon his return. This is not hearsay.

### 1.2 – Marsha Keith's Affidavit

[16] Wife also moved to strike portions of paragraphs 3, 4, and 6 of Keith's affidavit, in which Keith described Husband's attempts to change his beneficiary

designations for his IRA and other accounts. In her motion to strike, Wife claimed that Keith lacked personal knowledge concerning those attempts. Keith amended her affidavit to comport with Trial Rule 56(E), and it was attached to the Estate's response to Wife's motion to strike. Her amended affidavit reads in pertinent part,

> 3. In May 2017, Husband contacted Raymond James to change the beneficiary designation on his IRA accounts. *I was present when he made this phone call and have personal knowledge that it occurred.*
>
> 4. Around that time, Husband was in the process of changing the beneficiary designation on all of his accounts, including his life insurance and bank accounts, from Wife to his daughters, Melissa Watts and Stacey Hamilton. He also signed a power of attorney and living will giving his daughters authority over his end of life decisions. *I was present when Husband performed these actions and have personal knowledge they occurred.*
>
> ….
>
> 6. On Tuesday, October 10, 2017, Husband and I went back to Raymond James so that Husband could change his beneficiary designation and divide his IRA funds. Husband spoke with a woman named Jennifer, who took a copy of Husband's divorce decree. Husband told me that Tom Rillo, Husband's Raymond James Financial Adviser, was on vacation at the time, so Husband was unable to sign any beneficiary paperwork or take any other action. Raymond James advised that Tom would call Husband upon his return.

*Id*. at 136 (emphases added).

[17] We believe that Keith's amendments to her affidavit, italicized above and indicating her personal knowledge of and presence during Husband's attempts to change his designated IRA beneficiary, are sufficient to cure most if not all the defects alleged by Wife. As for the final two sentences of paragraph 6, we again note that they are not hearsay because they were not offered for the truth of the matter asserted (whether Rillo was in fact on vacation or would in fact call Husband). Even so, Keith's assertion as to what Husband told her is cumulative of the statements included in Rillo's affidavit, and because Wife was not prejudiced by these additional statements, any error would be considered harmless. *Keown v. Keown*, 883 N.E.2d 865, 870-71 (Ind. Ct. App. 2008).

## Section 2 – The trial court did not err in granting the Estate's summary judgment motion and denying Wife's summary judgment motion.

[18] Wife claims that the trial court erred in granting the Estate's motion for summary judgment and denying her motion for summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment stage. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019).

[19] Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, if "the moving party satisfies this burden through evidence designated to the trial court, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Biedron*, 106 N.E.3d at 1089 (quoting *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*).

[20] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the non-moving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 41 (Ind. Ct. App. 2019) (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)), *trans. denied*. The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 106 N.E.3d at 1089. Where, as here, the parties file cross-motions for summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 303 (Ind. Ct. App. 1998).

[21] We first address Wife's procedural argument. She challenges the trial court's issuance of a summary judgment order that offers no explanation as to the issue(s) upon which it found no genuine issue of material fact. She relies on language in Indiana Trial Rule 56(C), which reads, "The court shall designate the issues or claims upon which it finds no genuine issue as to any material facts." We find her reliance misplaced. The language upon which Wife relies must be read in context. Its placement in section (C) indicates that it applies only to circumstances in which summary judgment is rendered as to fewer than all the issues, claims, or parties, that is, where summary judgment is only partial.[3] Here, the trial court entered summary judgment on the only unresolved issue – the ownership of Husband's IRA balance. *See* Tr. Vol. 2 at 15-16 (trial court indicating just one issue yet unresolved – ownership of Husband's IRA balance – and parties stipulating to trial court's continuing jurisdiction). The court did not err in declining to include in its order an explanation concerning the absence of material factual issues.

[22] Turning to the substance of the underlying dispute, we note that it involves the interpretation of contracts. Matters of contract interpretation are questions of law and therefore are particularly appropriate for summary judgment. *Brill*, 12

---

[3] Wife cites as support *Palmer*, 173 Ind. App. at 217, 363 N.E.2d at 1250, where another panel of this Court reversed and remanded with instructions for the trial court to reconsider and to designate its reasons for granting summary judgment for two of the named defendants. *Palmer* involved multiple claims against multiple defendants and therefore is distinguishable.

N.E.3d at 309. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. *Id*.

[23] Here, the parties opted to settle all property division matters via the Agreement. With respect to the division of Husband's IRA accounts, the Agreement reads,

> 8. RETIREMENT, PENSIONS AND ANNUITIES: Husband has an IRA through Raymond James, Account No. … with an account balance of $389,482.78 as of August 31, 2017. Wife shall be entitled to 50% of Husband's retirement account as of August 31, 2017 in the amount of $194,741.39. If necessary, Wife shall be responsible for preparing the Qualified Domestic Relations Order. Husband shall take all necessary steps at Raymond James to separate said IRA into an IRA account in Wife's sole name within 30 days.

Appellant's App. Vol. 2 at 14-15 (underlining omitted). Paragraph 10 of the Agreement reads, in pertinent part, "Each party shall be awarded any and all monetary assets in his or her own respective name including but not limited to accounts held by each party." *Id*. at 15.

[24] The Estate maintains that by agreeing to a fifty-fifty split of the present value of Husband's IRA, Wife waived any interest in his half of the IRA. For a waiver of interest to be valid, the waiver must be made knowingly, voluntarily, and intelligently. *Von Haden*, 699 N.E.2d at 304.

[25] Wife claims that she did not waive her interest in Husband's half of the IRA and therefore is entitled to it as the designated IRA beneficiary. She relies on *Graves v. Summit Bank*, where another panel of this Court applied to IRAs the

same rule that existed for life insurance policies – that a dissolution decree alone does not result in a change of the named beneficiary of the former spouse's IRA. 541 N.E.2d 974, 977 (Ind. Ct. App. 1989), *trans. denied* (1990). In *Graves*, the husband opened an IRA and named his wife as the beneficiary. *Id*. at 975. Two years later, the couple divorced, and the dissolution decree awarded the husband's IRA solely to him. *Id*. Three and a half years later, the husband died, and while he had changed his will to remove bequests to his former wife, he never executed a change of IRA beneficiary. *Id*. The wife sued his estate to recover the IRA funds, and the trial court entered summary judgment for the estate. *Id*. The *Graves* court reversed and entered summary judgment for the wife, holding that she had only an expectancy interest, not a property right, in the IRA as a result of the property settlement agreement and that because the husband never changed his beneficiary designation, the IRA funds passed to her as a non-probate transfer. *Id*. at 979. *See also Rishel v. Estate of Rishel ex rel. Gilbert*, 781 N.E.2d 735, 737 (Ind. Ct. App. 2003) (holding ex-wife did not waive her rights as named beneficiary where property settlement set off ex-husband's retirement accounts as his sole property, ex-wife had only an expectancy interest as named beneficiary on the accounts, and ex-husband died two months later without having changed named beneficiary).

[26] We agree with the Estate that this case is more analogous to *Von Haden* than to *Graves* or *Rishel*. In *Von Haden*, another panel of this Court addressed the following issue: "when the parties' marital dissolution property settlement equally divides a 401K plan savings account and the husband does not replace

his ex-wife as beneficiary, how are the proceeds of that account to be divided upon the husband's death?" *Id*. at 302. There, as here, the settlement agreement divided the husband's retirement account fifty-fifty, giving the wife a present right to half of the account's present value. *Id*. at 304. In other words, "when the marital pot was divided, the parties and the court considered the cash value of the IRA at the time of separation, not the value of a revocable expectancy." *Id*. at 305. The *Von Haden* court affirmed summary judgment in favor of the estate, finding as a matter of law that in agreeing to take one-half of the husband's account per the settlement agreement, the wife had waived any right she might have had to the husband's share of his pension benefit. *Id*. at 306.

[27] Wife contends that *Von Haden* is distinguishable in that it involved a plan governed by the Employee Retirement Income Security Act ("ERISA"). She correctly points out that plans under ERISA are subject to certain limitations concerning the assignment of benefits. However, the "provisions of ERISA do not preclude the waiver by a designated beneficiary of a right to the payment of benefits." *Id*. at 304. The *Von Haden* court resorted to Indiana law to guide its analysis concerning what constitutes a waiver. *Id*. at 305 (waiver must be knowingly, voluntarily, and intelligently made). While it is true that the release provision in *Von Haden* was more explicit than in the present case, i.e., "each party accepts the provisions of this agreement in full release and settlement of any and all claims and rights against the other," *id*., we believe that Wife acted knowingly, voluntarily, and intelligently in this case as well.

For example, the Agreement here was more specific than the settlement agreement in *Von Haden*. The Agreement awarded Wife not merely "one half," *id*. at 304, but rather a sum certain of "$194,741.39" based on a specific valuation date of "August 31, 2017." Appellant's App. Vol. 2 at 14-15. By signing the Agreement, Wife accepted a sum-certain share of Husband's IRA as determined on a definite valuation date. This represents a present property right, as in *Von Haden*, and not merely an expectancy interest, as in *Graves* and *Rishel*. The Agreement further ordered the separation of the IRA into one account each for Husband and Wife and specified that each party would own the accounts that were held in his/her own respective name. This means $194,741.39 for Wife, to be separated from the balance, which was owned by Husband.

We believe that Wife's intent at the time of contracting was both clear and specific, as is evidenced in her subsequent filings with the court. In her motion for TRO, she not only specified her right to $194,741.39 but also requested an order freezing the Estate's and Rillo's office's ability to make any claims to or disbursements of the IRA funds until she received her sum-certain distribution. Subsequently, in her motion to compel distribution, she clearly asserted a present property interest in the $194,741.39 awarded to her per the Agreement. In her TRO motion, she specified that she had learned (mistakenly, as it turned out) that Husband had changed his designated IRA beneficiary of his remaining balance from her to his own daughters. *Id*. at 17. These filings indicate not only *her* intent but also her understanding of *Husband's* intent to change his

beneficiary designation. *Cf. Rishel*, 781 N.E.2d at 744 (expressing serious misgivings about awarding spouse's IRA proceeds to ex-spouse in cases of excusable neglect or inadvertence as opposed to expressed intent to keep beneficiary designation as is) (Friedlander, J., concurring). It was only when she later discovered that Husband had died before executing a change of beneficiary form that she increased her demand to include Husband's half of the IRA.

[30] Wife bases her cross motion for summary judgment on the fact that she was the listed beneficiary of Husband's IRA on the date that he died. The Estate asserts that the equitable rule of substantial compliance invalidates her claim. Substantial compliance has been held to supply an equitable remedy when a person has done "everything within his power" to change a beneficiary to an insurance policy. *Borgman v. Borgman*, 420 N.E.2d 1261, 1265 (Ind. Ct. App. 1981), *trans. denied*. *See also Elliott v. Metro. Life Ins. Co.*, 116 Ind. App. 404, 421, 64 N.E.2d 911, 917 (1946) (substantial compliance applied to effect change of beneficiary where intended change of beneficiary was frustrated by original beneficiary). Substantial compliance, although a fact-sensitive determination, has been held to be a question of law. *See, e.g.*, *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (substantial compliance with notice provisions in the Indiana Tort Claims Act is question of law).

[31] Here, the Agreement afforded Husband thirty days to complete a separation of Wife's $194,741.39 from the balance of the IRA. On days seven and eight of that period, Husband went to Rillo's office and attempted to separate out

Wife's sum-certain interest and to change the beneficiary of his remaining balance. On the second of those attempts, he left a copy of the dissolution decree with Rillo's staff. On day nine, he was critically injured in an accident, and on day ten, he died. In his affidavit, Rillo explained,

> 9. Per my standard practice and procedures, once I received the divorce decree from Husband, I would have prepared the paperwork necessary to divide the funds in Husband's IRA accounts and to [e]ffect a change of his beneficiary designation for Husband's signature.

> 10. At the time Husband delivered the divorce decree to Raymond James, there is nothing more he could have done to separate his IRA funds and change his beneficiary.

*Id*. at 83-84.

[32] Wife argues that the Estate failed to meet its burden because it did not designate any evidence listing the requirements to change an IRA beneficiary. We disagree. In the unchallenged portion of his affidavit, Rillo averred that in delivering the dissolution decree to his office, Husband had done everything within his power to separate out Wife's one-half interest and to execute a change of the designated beneficiary. Wife did not designate any evidence to the contrary. Husband substantially complied with the Agreement's requirement as to the separation of accounts and did exactly what he had been instructed to do concerning the change of his IRA beneficiary. He died two days later, while waiting for Rillo to return and prepare the necessary paperwork so that he could formally execute these changes. He therefore is

deemed to have completed these changes pursuant to the equitable rule of substantial compliance. Accordingly, we affirm the grant of the Estate's motion for summary judgment and the denial of Wife's motion for summary judgment.

[33] Affirmed.

Vaidik, C.J., and Altice, J., concur.