# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 12 2019, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Logansport, Indiana

ATTORNEY FOR APPELLEES

Andrew B. Miller
Starr Austen & Miller, LLP
Logansport, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

James Mark Osburn,

*Appellant-Plaintiff,*

v.

Community Newspaper
Holdings of Indiana, LLC,
Heredos Enterprises, Inc., and
Doane Keyes Associates, Inc.,

*Appellees-Defendants*

September 12, 2019

Court of Appeals Case No.
19A-CT-209

Appeal from the Cass Superior
Court

The Honorable James K.
Muehlhausen, Judge

Trial Court Cause No.
09D01-1604-CT-11

**Crone, Judge.**

## Case Summary

[1] James Mark Osburn went to his local newspaper office to purchase an

advertisement. As he attempted to sit down on a chair, it collapsed, and he fell

to the floor and sustained injury. He filed a negligence action against the newspaper and the chair's retailer, domestic wholesaler/distributor, and foreign wholesaler/distributor. The domestic wholesaler/distributor, Doane Keyes Associates, Inc. ("DKA"), sought and was granted summary judgment. Osburn appeals that ruling. We affirm.

## Facts and Procedural History

The relevant facts are undisputed. In February 2011, DKA ordered office chairs, including the one at issue in this case, from Performance Furnishings a/k/a Source Office Furnishings ("Performance Furnishings"). Performance Furnishings placed the order with the manufacturer, Goldfine Furniture ("Goldfine"), which shipped the chairs directly to DKA. The chairs arrived in boxes and were packed four to a box, with the seats detached and each chair encased in foam and cardboard around its legs, arms, and back. The seats were attachable with four screws. The chairs were not separated for further shipping unless a customer ordered a number not divisible by four. In that case, each extra chair would be wrapped in a furniture blanket before shipment, with the foam and cardboard remaining intact. DKA received the order of chairs in June 2011. Three months later, Heredos Enterprises, Inc. ("Heredos"), ordered chairs from DKA to be sold by its retail store, Lucas Home Furnishings ("Lucas"). Lucas took delivery of the chairs on September 23, 2011. Shortly thereafter, the Pharos Tribune ("the Tribune") purchased the chairs from Lucas for use in its offices and guest waiting areas.

[3] On April 22, 2014, Osburn went to the Tribune seeking to purchase a newspaper advertisement for his upcoming yard sale. He stood in line waiting to be helped. When he reached the front of the line and expressed his interest in buying an ad, a Tribune employee told him to have a seat. As he attempted to sit down, he gripped the armrests to ease into the seat. At that point, the chair's right arm joint failed, and the chair collapsed. Osburn fell and was injured. On April 22, 2016, he filed a personal injury action against Community Newspaper Holdings, LLC (the owner of the Tribune), the chair's retailer Heredos a/k/a Lucas, wholesaler/distributor DKA, and DKA's Canadian vendor, Performance Furnishings.[1] His complaint alleged that, he received painful injuries and incurred medical expenses as a proximate result of the Defendants' negligence.

[4] In April 2018, DKA filed a motion for summary judgment on Osburn's claims related to the Indiana Products Liability Act. The trial court granted the motion from the bench on May 25, 2018. Osburn did not appeal that order.

[5] In June 2018, DKA filed a motion for summary judgment as to Osburn's negligence claim, asserting that it owed no duty to Osburn as a matter of law. DKA designated materials to show that it had relinquished possession and control of the chair nearly three years before Osburn was injured, that until Osburn filed his action DKA had no knowledge of the identity of the purchaser

---

[1] Performance Furnishings entered into a settlement with Osburn. Neither Heredos nor Community Newspaper Holdings is participating in this appeal.

or of the circumstances and/or timing of Lucas's sale of the chair, and that it had received no complaints or notice regarding any issues with the chair's structural integrity until April 2016, when Osburn filed his complaint. *See* Appellant's App. Vol. 2 at 59 (DKA purchasing officer's affidavit averring that to his knowledge no agent or employee of DKA had received any complaints or even communications regarding the chairs in the years between its delivery to Lucas and the filing of the present action). On January 11, 2019, the trial court issued an order granting summary judgment for DKA. Osburn now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Osburn claims that the trial court erred in granting DKA's motion for summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment stage. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019).

Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, if "the moving party

satisfies this burden through evidence designated to the trial court, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Biedron*, 106 N.E.3d at 1089 (quoting *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*).

[8] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the non-moving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 41 (Ind. Ct. App. 2019) (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)), *trans. denied*. The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 106 N.E.3d at 1089. We may affirm a grant of summary judgment on any legal basis supported by the designated evidence. *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010).

[9] To prevail on a common law negligence claim, the plaintiff must demonstrate "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Buddy & Pals*, 118 N.E.3d at 41 (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). "The

duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Id*. (quoting *Stump v. Indiana Equip. Co.*, 601 N.E.2d 398, 402 (Ind. Ct. App. 1992), *trans. denied* (1993)). Although negligence claims are rarely appropriate for summary judgment due to their fact sensitivity, the issue of "whether a duty exists is a question of law for the court to decide." *Goodwin*, 62 N.E.3d at 290.

[10] As a preliminary matter, we address what appears to be some confusion as to the nature of Osburn's negligence action. With respect to DKA, Osburn's action cannot properly be deemed a premises liability action because DKA is not the owner/possessor of the premises upon which Osburn was injured. *See Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991) (duty of care to business invitee applies only to those who own or possess the property). DKA is the wholesaler/distributor of an allegedly defective chair. Although both parties cite various provisions of the Products Liability Act in their briefs, we note that the trial court granted summary judgment in favor of DKA on Osburn's products liability claims. We do not know the nature of Osburn's products liability claims, because his complaint is phrased only in terms of negligence. However, we do know that Osburn did not appeal the previous summary judgment and that he admits that his only claim in this appeal is one for negligence. Appellant's Reply Br. at 9. We limit our discussion accordingly.

[11] Osburn contends that the duty aspect of his negligence claim against DKA must be analyzed within the framework of Sections 388 and 392 of the Restatement (Second) of Torts. Section 388 reads,

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243, 1245 (Ind. 1997) (quoting RESTATEMENT (Second) OF TORTS § 388 (1965)).

[12]     Section 392 reads,

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied or,

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 392 (1965)).

[13]     Assuming, without deciding, that Osburn's reliance on the Restatement is not misplaced, we note that the designated evidence does not demonstrate that DKA delivered to Lucas a chair that was dangerous and unsuitable to support a sitting/seated person. DKA was simply a distributor of the chairs. It received them in boxes, kept them in a protected condition for shipment to Lucas, and did not perform any assembly of the chairs. Appellant's App. Vol. 2 at 156. Nor did it alter the chairs in any way. Osburn asserts that DKA should have tested and inspected each chair to discover its allegedly dangerous condition and then informed its customers accordingly. RESTATEMENT (SECOND) OF TORTS §§ 388(c), 392(b). In support, he designated excerpts from the report of the Tribune's expert, Nicholas Cunningham. Cunningham reported that he conducted a thorough inspection of the chair in question and an intact chair of the same model (that presumably had withstood similar stress and strain over the nearly three years it had been used at the Tribune). Cunningham found that Osburn's chair failed due to an insufficient amount of glue to secure the tenon/mortise (arm) joint and concluded, "This would be a manufacturing defect." Appellant's App. Vol. 2 at 97. However, Cunningham also concluded that the failure was "neither easily anticipatable nor predictable" and that "there would have been no physical way for a layperson *or even a trained person*

to inspect for the lack of adhesive within the tenon/mortise joint." *Id*. at 97, 104 (emphasis added). Osburn's designated evidence simply does not support his assertion that DKA should have known the chairs to be dangerous when it shipped them to Lucas.

[14] Also significant is the fact that the chair in question did not fail until 942 days after DKA relinquished possession and control of it to Lucas.[2] In the interim, the chair was in the control of the Tribune. Tribune safety leader Amy Newcom confirmed that she conducts a monthly inspection of every chair in the reception area to detect any looseness. *Id*. at 100, 111. Tribune marketing consultant Renee LoCoco reported that ten to fifteen customers a day, or as many as twenty-five customers a day during busy season, had sat in the allegedly defective chair. *Id*. at 101. The designated evidence indicates that the chair had safely supported thousands of seated persons before Osburn attempted to sit in it and therefore was neither dangerous nor unsuitable for its intended use as of the date that DKA relinquished control of it.[3]

---

[2] To the extent that Osburn appears to rely on DKA's three-year warranty, we note that he did not raise breach of express warranty here or in his complaint or materials in opposition to summary judgment. Nor did he raise assumption of duty based on the warranty. Consequently, these theories are unavailable for consideration on appeal. *See Messmer v. KDK Fin. Servs., Inc.*, 83 N.E.3d 774, 781 (Ind. Ct. App. 2017) (issues not raised before trial court on summary judgment are not preserved for appeal); *see also Ward v. First Plaza Joint Venture*, 725 N.E.2d 134, 137 (Ind. Ct. App. 2000) ("A party cannot change its theory in opposition to summary judgment and on appeal raise an issue that was not properly presented to the trial court."), *trans. denied*.

[3] DKA's Robert Schrader testified that at the time of its sale to Lucas, DKA did not know that the chairs were eventually going to be sold by Lucas to the Tribune, let alone the identities of persons who might sit on the chairs. Appellant's App. Vol. 2 at 174. He explained that a notation "Tag: Pharos-Tribune" was added

Osburn also maintains that DKA had and breached a duty to include instructions concerning the attachment of the seat, which was performed at some point after delivery, either by Lucas or by the Tribune. We find his designated evidence insufficient to show that DKA did not include such instructions. Instead, it indicates only that Schrader did not know whether there were seat assembly instructions included inside the boxes of chairs and that, during the discovery phase of the proceedings, Lucas was unable to locate any such instructions. As such, Osburn's claims concerning seat assembly instructions are based on conjecture. *See Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000) ("Negligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on each element must be designated to the trial court. However, an inference is not reasonable when it rests on no more than speculation or conjecture.") (citation omitted).

In sum, DKA was three degrees removed from Osburn in the chain of distribution and nearly three years removed from its relinquishment of control of the chairs. Osburn failed to designate materials in opposition to summary judgment to demonstrate that the chair was dangerous when delivered and that DKA had a duty that extended to him, as a remote user of a chair with a defect nearly impossible even for experts to detect. As a matter of law, we conclude

---

after the contract of sale, probably just before shipment, because "evidently someone had contacted us after the fact to tag that for Lucas." *Id.*

that DKA did not owe Osburn a duty. As such, the trial court did not err in granting summary judgment for DKA. Accordingly, we affirm.

[17] Affirmed.

Bradford, J., and Tavitas, J., concur.