

FILED

Jan 12 2021, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Michael E. Simmons
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Robert C. Beasley
Beasley Law Office
Muncie, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald Lowrey and Barbara Lowrey, | January 12, 2021 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 20A-CT-1309 |
| v. | Appeal from the Delaware Circuit Court |
| SCI Funeral Services, Inc. d/b/a Elm Ridge Funeral Home and Cemetery, LLC a/k/a Elm Ridge Funeral Home and Memorial Park, | The Honorable Thomas A. Cannon, Jr., Judge |
| *Appellee-Defendant* | Trial Court Cause No. 18C05-1904-CT-49 |

**Crone, Judge.**

## Case Summary

[1]     Donald Lowrey and Barbara Lowrey fell and were injured while visiting their daughter's interment site at a local cemetery. They filed a negligence action

against SCI Indiana Services, Inc. d/b/a Elm Ridge Funeral Home and Cemetery, LLC a/k/a Elm Ridge Funeral Home and Memorial Park (Elm Ridge). Elm Ridge sought and was granted summary judgment, and the Lowreys appeal that order. We affirm.

## Facts and Procedural History

[2] The relevant designated facts are undisputed. On the afternoon of April 1, 2019, the Lowreys went to Elm Ridge Memorial Park (the cemetery) to visit their daughter's interment site in the mausoleum. They had visited there seven or eight times since their daughter's funeral and had made a practice of walking from the parking lot to the site via a sidewalk, which was six feet wide on approach to the mausoleum area, where it connected at a right angle to the ten-foot-wide sidewalk that formed a perimeter around the mausoleum itself. Donald chose to use sidewalks because his chronic back condition made it difficult for him to walk on uneven grassy surfaces and his doctor had warned him, "If you ever fall, you'll break your back." Appellants' App. Vol. 2 at 37-38, 51.

[3] During this particular visit to the cemetery, the weather was cold and windy, but visibility was good. The Lowreys got cold and decided to return to their vehicle while they awaited the arrival of some relatives. They rounded the mausoleum on the sidewalk and turned to take the connecting sidewalk toward the parking lot. *See* Defendant's Ex. E (below).



Defendant's Exhibit E
Donald/Barbara Lowrey

[4] At the corner connecting the two sidewalks, Donald "took a shortcut," stepping over the grass and attempting to step on the intersecting sidewalk. *Id*. at 46. His foot did not make it all the way onto the intersecting sidewalk but landed "half on [the sidewalk] and half off the [right] edge." *Id*. This caused his ankle to roll, and he fell forward. As he fell to the ground, he struck Barbara, who was walking slightly ahead of him and to his left. This caused Barbara to fall to the ground. Both were injured as a result.

[5] There was no debris or ice on the sidewalk, and there were no imperfections, obstructions, or irregularities in the cement. *Id*. at 40, 48-49. The Lowreys were the only ones on the sidewalk at the time, and the two had never had any difficulty traversing the cemetery's sidewalks. Elm Ridge had not received any

complaints or injury claims related to the use or condition of the sidewalks or adjacent landscaping or grounds. Donald noticed some erosion next to the corner formed by the two sidewalks, which he described as "in plain sight … just the ground." *Id*. at 36. Barbara described the erosion as having "caught [her] eye" but something that she "didn't think about [] after that." *Id*. at 63. When asked if it struck her as being anything of concern, she answered in the negative. *Id*. The Lowreys had never reported the erosion to Elm Ridge. *Id*. at 35, 64.

[6] The Lowreys filed a negligence action against Elm Ridge, asserting "that the ground/soil erosion where the grass/ground meets the edge of the sidewalk create[d] a hazardous condition and caused [their] trips/falls." *Id*. at 27. (Donald's response to Elm Ridge's third interrogatory). Elm Ridge filed a motion for summary judgment and an accompanying memorandum, claiming that it was not negligent as a matter of law. The Lowreys filed a response in opposition, and the parties designated affidavits, photographs, and excerpts from depositions in support of their respective positions. The trial court conducted a hearing and issued an order with findings and conclusions, granting summary judgment in favor of Elm Ridge. The Lowreys now appeal. Additional facts will be provided as necessary.

## Discussion and Decision

[7] The Lowreys challenge the trial court's grant of summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the

same standard as the trial court. *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 41 (Ind. Ct. App. 2019) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)), *trans. denied*. In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment stage. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019).

[8]     Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, the "nonmoving party must come forward with contrary evidence showing a genuine issue for the trier of fact." *Buddy & Pals*, 118 N.E.3d at 41 (quoting *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009)).

[9]     In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the nonmoving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Buddy & Pals*, 118 N.E.3d at 41 (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). Here, the trial court included special findings of fact in its summary

judgment order. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Ball v. Jones*, 52 N.E.3d 813, 818 (Ind. Ct. App. 2016). A trial court's grant of summary judgment is clothed with a presumption of validity. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied* (2015). Thus, the party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 106 N.E.3d at 1089. We may affirm a grant of summary judgment on any legal basis supported by the designated evidence. *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010).

[10] The Lowreys' action against Elm Ridge is a negligence action. To prevail on a negligence claim, the plaintiff must demonstrate "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). The issue of "whether a duty exists is a question of law for the court to decide." *Id.* at 389. Absent a duty, there can be no breach and therefore no liability. *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016). "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 402 (Ind. Ct. App. 1992), *trans. denied* (1993).

[11] The Lowreys base their negligence action on premises liability, maintaining that Elm Ridge owed them a duty of reasonable care for their safety as invitees on the property, breached that duty, and proximately caused their injuries. *See*

*Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991) (landowner owes duty to exercise reasonable care for invitee's safety while invitee is on landowner's premises, which includes maintaining and inspecting property and warning invitee of unreasonable risk of harm). On summary judgment, "[n]egligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, *on each element* must be designated to the trial court." *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000). "[A]n inference is not reasonable when it rests on no more than speculation or conjecture." *Id*. "The mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall." *Taylor v. Cmty. Hosps., Inc.*, 949 N.E.2d 361, 364 (Ind. Ct. App. 2011) (quoting *Hall v. Eastland Mall*, 769 N.E.2d 198, 206 (Ind. Ct. App. 2002)). It is well-established public policy in Indiana that landowners/possessors are not insurers of their invitees' safety. *Goodwin*, 62 N.E.3d at 394.

[12] Because there seems to be some confusion as to the proper analysis to be applied in this action, we emphasize that the Lowreys seek redress for an allegedly dangerous *condition* on the land rather than an allegedly dangerous *activity* on the land. As such, we do not apply the foreseeability test for duty espoused in *Goodwin*, which analyzes the broad type of plaintiff and the broad type of harm when determining whether a duty exists. 62 N.E.3d at 393-94. Rather, because this action pertains to an allegedly dangerous condition, we engage in the *Burrell* analysis, which adopted the Restatement (Second) of Torts Section 343 to determine whether a duty exists. *Hoosier Mountain Bike Ass'n v.*

*Kaler*, 73 N.E.3d 712, 716 n.4 (Ind. Ct. App. 2017) (citing *Rogers*, 63 N.E.3d at 322-23).

[13] According to Section 343 of the Restatement, a landowner/possessor is subject to liability for physical harm to its invitees caused by a condition on the land only if the landowner/possessor

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

[14] Doubtless, Elm Ridge had a duty to maintain its sidewalks in a safe condition. The undisputed material facts show that it met this duty, as evidenced by the designated photographic exhibits depicting flat, even, unobstructed, and wide sidewalks that appear to be in pristine condition.

[15] In its summary judgment order, the trial court found that the condition about which the Lowreys complain was open and obvious. We agree. Section 343A of the Restatement describes known or obvious dangers in pertinent part as follows:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land

whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.[1]

[16] The Lowreys designated a report by professional engineer Richard Hicks, who cited a study that found that pedestrians typically take the shortest route to where they want to go. Appellants' App. Vol. 2 at 151. Hicks determined that the drop-off from the sidewalk to the adjoining ground was two to three inches and that the erosion was due to the direction of the drainage in the corner between the intersecting sidewalks. *Id*. He also opined that "[t]he failure to maintain the ground next to the sidewalk flush, or nearly flush with the sidewalk was directly related to the causation of [Donald's] fall." *Id*. The differential between the sidewalk and the adjoining dirt and grass is not in dispute.[2] Donald testified by deposition that the "drop-off" was "about 2 inches," and the photographic exhibits depict a difference of a couple inches. *Id*. at 106.[3]

[17] The undisputed material facts show that the approximately two-inch differential between the sidewalk and adjacent ground was an open and obvious condition.

---

[1] The cemetery is neither public land nor a public utility, but rather, is privately owned. Therefore, Section 343(A)(2) does not apply.

[2] To the extent that the Lowreys refer to the condition as a hole, we reject that characterization.

[3] Hicks's report addresses causation but nevertheless implies a duty to maintain the ground/grass in a condition flush or nearly flush with the sidewalk. Requiring Elm Ridge to keep the ground/grass in a condition that is approximately flush with every edge of its sidewalks at all times is unrealistic, especially when considering variables such as rainfall, grass growth, and mowing. This would come perilously close to rendering Elm Ridge an insurer of its invitees' safety.

Donald admitted to noticing the condition of the corner where the sidewalks intersect. He described it as "in plain sight … just the ground." *Id*. at 36. Barbara described the condition of the ground next to the sidewalk as having "caught [her] eye" but as something that she "didn't think about [] after that." *Id*. at 63. When asked if it struck her as being anything of concern, she answered in the negative. *Id*. The Lowreys nevertheless claim that because many invitees are in a state of emotional distress during their visits to the cemetery, Elm Ridge should have anticipated their harm despite their knowledge of the obvious condition. We disagree. While in a general sense, one can always anticipate that one who steps half on and half off any surface may suffer a fall, this is too speculative an occurrence to create in Elm Ridge a legal duty to have anticipated it regardless of the Lowreys' knowledge of the condition.

[18] In sum, negligence cannot be inferred from the mere fact that the Lowreys fell. *Taylor*, 949 N.E.2d at 364. The undisputed designated evidence simply does not support their claim that Elm Ridge had a duty to protect them in these circumstances, where Donald agreed that the catalyst for his and Barbara's falls was his own act of taking a "shortcut" and stepping on the edge of the sidewalk with a small drop-off that was "in plain sight." The allegedly dangerous condition was known and obvious, and Elm Ridge is not liable as a matter of law. Accordingly, we affirm.

Affirmed.

Najam, J., and Riley, J., concur.